M. R. DILLY, Appellee, v. PAYNSVILLE LAND COMPANY, Appellant.

**LANDLORD AND TENANT: Possession of Premises—Duty of Landlord to Put Lessee in Possession.** There is an implied agreement on the part of a landlord, in the absence of an agreement to the contrary, that the premises shall be open for the tenant to take possession at the time stipulated. The tenant is under no obligation to maintain an action against one in possession in order to secure such possession for himself.

**LANDLORD AND TENANT: Possession of Premises—Wrongful Withholding—Measure of Damages—Evidence.** A lessee wrongfully deprived of the possession of leased premises is entitled to damages measured by the difference between the fair value of the leasehold interest acquired by him under the lease and the amount which he agreed to pay for such leasehold interest. It is pure *speculation* to attempt to meet this rule by evidence tending to show (a) the amount, character and value of the produce which some other person raised on the premises during the time in question, or (b) the amount which the lessee, had he been equipped with some unknown amount of stock, *might* have netted, had he been permitted to occupy the premises.

**TRIAL: Instructions—Form, Requisites and Sufficiency—Applying Erroneous Evidence to Correct Rule.** The erroneous reception of evidence which can only lead the jury into the zone of speculation and conjecture on the question of damages is not cured but *aggravated* by an instruction which gives the jury the correct rule for measuring the damages and directs the jury that such erroneous evidence must be used solely in applying such correct rule.

*Appeal from Harrison District Court.*—E. B. WOODRUFF, Judge.

WEDNESDAY, JANUARY 19, 1916.

ACTION to recover damages based on the failure of the defendant to deliver to the plaintiff certain premises leased by the defendant to the plaintiff under written lease. Opinion states the facts. Verdict and judgment for the plaintiff. Defendant appeals.—*Reversed.*

*C. W. Kellogg,* for appellant.

*Cochran & Barrett,* for appellee.

GAYNOR, J.—This action is brought to recover damages alleged to have been sustained by the plaintiff by reason of the failure of the defendant to put the plaintiff in possession of certain farm lands leased by the defendant to the plaintiff.

It is claimed that, on the 2d day of January, 1913, the plaintiff and the defendant entered into a certain written contract of lease, by the terms of which the defendant demised and leased to the plaintiff the W 1/2 of the W 1/2 of Section 27, Township 81, Range 44, for the term commencing March 1, 1913, and ending March 1, 1914. The plaintiff, in consideration of the lease of the premises, agreed to pay as rental therefor as follows: one half of all grain and hay raised on the farm, to be delivered at the town of Orson or Pisgah, on or before the 1st of February, 1914; the plaintiff to use the pasture free of charge, but not to interfere with any work that the first party might want to do on the land not in cultivation at the time of the making of the lease. The balance of the lease is not material to this controversy.

The defendant did not place the plaintiff in possession of the leased premises, as required by the terms of the lease, and plaintiff never obtained possession of the leased premises, and he brings this action to recover damages alleged to have been sustained by such failure, and the damages alleged are: (1) In loss of time necessarily expended in procuring another place; (2) for services in making dikes on river and

ditch adjacent to the land, under the oral direction of defendant's authorized agents, Remington and Schmidt, alleging that these dikes were necessary to protect the land; (3) the difference in value between the rent reserved and the value of the premises for the term, alleging that the plaintiff would have realized a sum of money over and above the rent, had he been permitted to occupy the premises.

The defendant, in its answer, admits that it entered into the lease, but denies that plaintiff has been damaged by reason of his not having obtained possession of the leased premises; especially denies that there was any difference between the value of the leased premises and the rent reserved. The defendant further denies that it is liable on account of its failure to deliver the premises to the plaintiff, for the following reason:

"That the defendant did not refuse to place the plaintiff in possession of the leased premises, as set out in the petition, but avers the truth to be that the defendant had bought the land in question in good faith from one Lee, under a contract for deed, and that the said Lee refused to comply with the terms of said contract and deed same to defendant, and that defendant was obliged to sue in this court for a deed, which suit is now pending; and that the reason why defendant was unable to carry out his contract with plaintiff was because of the refusal of said Lee to convey said premises to defendant. And that the defendant was not in possession of said premises, but same were in possession of said Lee at all times."

Upon the issues thus tendered, the cause was tried to a jury and a verdict returned for the plaintiff. Upon this verdict, judgment was entered, and defendant appeals.

The errors assigned are based: (1) On alleged errors committed by the court in the introduction of evidence; (2) on the refusal of the court to give certain instructions asked by the defendant; (3) on the giving of certain instructions by the court on its own motion. The particular errors complained

of under each assignment will be treated separately in this opinion.

Before proceeding to the discussion of the errors assigned in detail, we will dispose of the question made in defendant's answer, in which he claims that there is no liability for a failure to place plaintiff in possession. This contention is based upon the thought that the failure to place plaintiff in possession was not due to any fault of the defendant, but rather to the fault of one Lee, with whom the defendant had a contract for the purchase of the land. We dispose of this question first, because, under this record, there must be a new trial, and this question still remains in the record for disposition on such new trial.

1. LANDLORD AND TENANT: possession of premises: duty of landlord to put lessee in possession.

It must be conceded that there is a conflict among the courts upon this question. The better reasoning is to the effect that there is an implied covenant between the lessor and the lessee that, when the time comes for the lessee to take possession, the premises shall be open to him for that purpose, and he is under no obligation to maintain an action against one in possession, to secure such right. This is the English rule. The other rule is that it is not the duty of the landlord, when the leased premises are wrongfully held by another, to take the necessary steps to put the lessee in possession. Defendant does not earnestly urge upon our attention this defensive matter set up in its answer. The court practically held that the defense was not good; that the plaintiff became entitled to possession under his lease; and that the failure of the landlord to place him in possession, at the time the right to possession accrued under the lease, entitled plaintiff to recover: and we think this was right. For a fairly full discussion of the conflicting views upon this question, see *King v. Reynolds,* 67 Ala. 229 (42 Am. Rep. 107); *Herpolsheimer v. Christopher,* (Neb.) 111 N. W. 359 (9 L. R. A. [N. S.] 1127).

The defendant is a nonresident company. In this trans-

action, it was represented by a Mr. Remington and a Mr. Schmidt. It appears that it was discovered by the defendant's representatives that Lee, the owner of the land, who was in possession and with whom the defendant company had a contract for the purchase of this land, had concluded not to perform his contract and deliver possession of the land to the defendant; that, soon after the 1st of March, the plaintiff was informed that there might be litigation and that no one might be permitted to enter upon the farm; that, about that time, Mr. Remington told the plaintiff of another place, owned by one Johnson; that plaintiff rented and went into the possession of this Johnson place about the 6th or 7th of March, and farmed this Johnson place during the year 1913. It does not appear how many acres there were in the Johnson place, whether more or less than in the place in controversy. Nothing appears as to the character of this land, nor the terms under which plaintiff rented it. There is nothing in the record to indicate that this Johnson farm was not, in every particular, as suitable to the plaintiff's needs and as desirable for farming purposes as the other. Ordinarily, we do not think that this would be a competent subject of inquiry. We state it simply to show the condition of the record, and for the purpose of exemplifying more fully the error into which we think the court fell in the introduction of evidence.

2. LANDLORD AND TENANT: possession of premises: wrongful withholding: measure of damages: evidence.

In cases of this kind, the general rule for the measurement of damages is the difference between the rent reserved and the value of the premises for the term, and such other damages as are shown to have resulted as the direct or necessary or natural consequences of the breach of the contract; and the court in this case instructed the jury in its 7th instruction as follows:

"The general rule for the measurement of damage in such cases is the difference between the rent reserved and the value of the premises for the term; and if the value of

the premises for the term is no greater than the rent which the tenant agreed to pay (in this case, the plaintiff), then the plaintiff has not suffered injury. But if the value of the premises, so far as shown by the evidence, is greater than the rent reserved in the contract, the lessee,—that is, the plaintiff,—is entitled to the benefit of his contract, and this will ordinarily consist of the difference between the two amounts.''

That this is the correct rule, see *Adair v. Bogle,* 20 Iowa 238; *Alexander v. Bishop,* 59 Iowa 572; *Sneller v. Hall,* (Neb.) 132 N. W. 934; *Bernhard & Son v. Curtis,* (Conn.) 54 Atl. 213; *Sibert v. Hostick,* (Neb.) 135 N. W. 1054.

Although the court stated the correct rule for the measurement of damages in this case, yet, when the plaintiff was introducing his evidence to establish his damages, the court permitted him, over the objection of the defendant, to propound to the plaintiff and to have answered by the plaintiff, the following questions:

''Q. Do you know how many bushels of corn were raised on this Lee farm during the year 1913? A. Yes. Q. How many bushels? A. Four thousand. Q. From your knowledge of alfalfa on that farm and your experience with that crop, how many tons of alfalfa were produced on the farm during the year 1913? A. To my personal knowledge, it would be 40 tons. Q. Do you know the number of acres that Mr. Lee had cultivated to corn? If so, state the number of acres. A. Something like 80. Q. Do you know the reasonable market value of the alfalfa? A. Yes, $7.00 a ton. Q. Do you know the reasonable market value of the corn raised on those premises during that year? A. Yes. Q. What was the reasonable market value during the fall and winter per bushel? A. Fifty cents. Q. What was the reasonable market value in October and November of corn per bushel in that neighborhood? A. Quite a few, I think, contracted for 60¢. Q. What would that farm which you rented from the defendant have been worth to a tenant if he had been permitted to go on there and occupy it, had he cultivated it in a workmanlike

manner? A. I think it was worth a thousand dollars to anyone who could have farmed it. Q. You mean all over and above the rent? A. Yes. Q. How much would it cost per acre to produce corn on the Lee place, delivered at the town of Pisgah? A. Of course, something in the neighborhood of $6.00 an acre. Q. Do you know what it would cost to cut the alfalfa and deliver one half in the town of Pisgah? A. Yes, sir. Q. How much? A. In my estimation, it could be delivered there from one dollar to a dollar and one half per ton, cut and delivered, including labor and teams in producing the crop.''

Two other witnesses were called by the plaintiff and practically the same questions asked and answered, over objection of the defendant.

Of the witness Lee, this question was asked and answered:

''What, in your opinion as a farmer, your experience as a farmer, would that place have been worth to a tenant, over and above his rent and the expense of cultivation for the year 1913? A. About $1,500. Q. What do you consider in getting that? A. Why, by the stock a man could raise on it and the crop he could receive off of it and the cows he could milk off the pasture and so on. Q. You have given an estimate of $1,500 as profit to the tenant after he had paid his rent. Do you mean to include therein the cost of producing the crop by the tenant? A. I mean that, yes. I mean producing the crop and paying his rent, it would be that left.''

The witness further testified: ''I base my opinion on the fact that Mr. Dilly might possibly raise a crop there and make a profit on his labor in view of his securing the year's work. I am basing it on what he could clear. I was basing that on his having colts, hogs, raising corn and hay and selling or feeding the hay.''

On cross-examination, this witness testified:

''I would say that the farm rented for the year 1913 was worth one half the crop. The entire place was worth one half

of the crop that could be raised on it. I would judge it would not be worth more than one half the crop to rent it. When the plaintiff agreed to pay one half for the place, he was paying all that the place was worth, as rental. He was not paying less than the place was worth. I should think he was paying just what it was worth."

We think the court erred in the admission of this testimony, for the reason that it is altogether speculative, and furnishes no substantial and sound basis upon which to estimate the plaintiff's loss. The rules laid down for the admeasurement of damages, though certain and definite in their statements, are often difficult of application to a particular state of facts. Here, the evidence discloses that the amount which the plaintiff agreed to pay for the use of the land as rental was all that the place was worth; that it was not worth less than he agreed to pay, to wit, one half of the crop, delivered, as provided in the lease. Yet the witnesses were permitted to testify as to what, in their opinion, the plaintiff could have cleared over and above expenses of carrying on the place, if he had been permitted to occupy it. They were permitted to state what another person raised upon the premises during that year, the amount and character of the produce raised and what it was worth on the market, and what could be or would be realized from it after paying the expense of marketing. There is no assurance in the record that plaintiff would have raised the same kind of crop that Lee raised, or that he would have raised the amount that Lee raised, if permitted to cultivate the farm. It also includes the stock which might be kept upon the farm, the cows placed in the pasture and milked, and many other things which the record does not assure us would be elements of profit to the plaintiff if he had been on the farm instead of Lee. One unsurmountable objection to all this testimony as to the amount that could have been raised on the farm by someone else is that it involves the personal labor of the occupant and

the thought that the occupant might make a profit on his labor, and, as the witness says, "in view of securing the year's work".

The record discloses that the plaintiff secured another farm within a few days after he was entitled to this farm; that he occupied it and makes no claim for loss of time, other than the three days which he claims he lost in securing this other farm. It is clear, therefore, that this testimony was altogether based upon speculation, and not upon the existence of proved facts. It is true that, under certain circumstances and conditions, the loss of profit may be shown in a suit founded upon breach of contract. The uncertainty as to the amount of damages which may be allowed is not always an obstacle to their allowance. If they are such damages as were reasonably in the contemplation of the parties at the time the contract was made, they may be recovered. The difficulty in many cases arises in an effort to distinguish between the uncertainty as to the amount of damages and uncertainty as to the cause of the damages. Here, the damages must be traceable to a breach of the contract, and the damages allowed must be such as are traceable to such breach. If the proof offered does not with reasonable certainty lay the basis for recovery of damages traceable directly to a breach of contract, then we say it is speculative, remote or conjectural. In this case, the plaintiff was entitled to such damages as were traceable to the breach of the contract, and to no other. To prove these damages, he is limited to the rule hereinbefore stated, and ought not to be permitted to go out into the field of uncertain speculation, as was permitted in this case, to establish the ultimate fact upon which his damage must rest. He is certainly not permitted to incorporate in the amount to be allowed as element of damage that which, under no theory of the case, can be said to have been lost by the breach. There is nothing in the circumstances of this case which takes the case out of the general rule. The only loss to the plaintiff which resulted from the breach of this

contract under this record is the difference between the fair value of the leasehold interest acquired under his lease and the amount he agreed to pay therefor, and then only in the event it were shown that the leasehold interest acquired was greater than the amount which he agreed to pay, and, as to this, his own witnesses say there was no damage. In this case, the plaintiff was allowed for the loss of time necessarily expended in procuring another place. He was allowed for his services in making dikes on the river, these being the first and second claims for damages, and of this no complaint is made.

The defendant asked the following instruction:

"You are instructed that some evidence has been introduced in this case, tending to show the amount plaintiff would have been able to realize had he been permitted to occupy said premises leased to him by the defendant, stock and farm the same during the year 1913. All such evidence is withdrawn from your consideration."

This requested instruction was refused by the court.

The defendant again requested the court to say to the jury as follows:

"You are instructed that you are not to consider, in arriving at your verdict in this case, what the plaintiff could or might have made as a profit, had he been permitted to occupy and cultivate the farm in question under said lease."

This was refused.

In view of our holding upon the error assigned in the introduction of this testimony, the court should have given both these instructions.

The court, on its own motion, in its 8th instruction, rather emphasized than cured the error when it said:

3. TRIAL: instructions: form, requisites and sufficiency: applying erroneous evidence to correct rule.

"Evidence has been introduced here regarding the character of the premises and the amount of crops raised thereon in the year 1913, and the

cost of production and harvesting. This evidence was allowed
to go before you for the purpose only of aiding you in
determining what the use of such premises was worth to the
plaintiff for the term of his lease and for no other purpose and
whether it was worth more than the rent which plaintiff was
to pay as provided in the lease. And, as before stated, if you
find there is no difference in those values, the plaintiff cannot
recover on item 3 of his petition; but if, from all the facts and
circumstances in evidence before you, you find that the use of
said premises was worth more to the plaintiff than the rent
provided in the lease, such difference would be the amount of
his damage on such item, not exceeding the amount claimed.''

The court thereby not only called the jury's attention to
this testimony, but gave it probative force upon the ultimate
question to be determined by the jury, and said that this was
competent evidence to be considered by the jury in determin-
ing the difference between the rent reserved and the value
of the premises for the term, thus allowing the plaintiff to
recover as damages one half the value of the crop which he
might have raised on the premises if permitted to occupy
them; although the production of this half involved the per-
sonal labor of the plaintiff, and it is not claimed that he lost
any time during that year on account of the breach of con-
tract.

For the errors pointed out, we think the case ought to be
and it is—*Reversed.*

EVANS, C. J., DEEMER and LADD, JJ., concur.