**MULLINS, Plaintiff-Appellee, v. BROWN, Defendant-Appellant.**

Ohio Appeals, First District, Clermont County.

No. 191. Decided April 24, 1950.

Ely, White & Davidson, Batavia, for plaintiff-appellee.
Carl L. Meier, Cincinnati, Nichols, Speidel & Nichols, Batavia, William J. Walsh, Cincinnati, for defendant-appellant.

## OPINION

By MATTHEWS, J.:

This is an action for breach of a contract to lease a specified portion of a farm known as Maplewood Farm and an unidentified portion containing from fifty to eighty acres of a farm known as Arcadia Farms containing one hundred and sixty-eight acres. That portion of the contract relating to the Maplewood Farm was fully performed and a final settlement made by the parties and is not involved in this litigation. We are concerned only with those matters relating to the leasing of a portion of the Arcadia Farms.

The issues of fact were submitted to a jury in the Common Pleas Court and it returned a verdict for the plaintiff for $2550.00. On defendant's motion for a new trial, the court required a remittitur of $1000.00, which was accepted by the plaintiff and judgment was thereupon rendered in his favor for $1550.00. It is from that judgment that this appeal was taken. Various errors are assigned.

(1) The plaintiff alleged that prior to April 1st, 1948, the defendant agreed to lease to him for the farming season of 1948-1949 no less than fifty acres upon which he was to plant corn and soy beans, furnish a team of horses and tractor, and also by the terms of their agreement the parties were to operate

a dairy. There is no promise on plaintiff's part to do anything as a consideration for the defendant's promise, but it is alleged that the plaintiff moved into the house on the Maplewood Farm, obtained a three months' leave of absence from his job as a railroad brakeman, and in various other ways prepared to take advantage of the defendant's promise. Whether this change of position after, and in reliance on the agreement is a sufficient consideration in law, we do not stop to consider. Certainly, if a contract was entered into, it was not the consideration contemplated by the parties at the time. The consideration was the mutual promises of the parties.

But the first contention of the defendant-appellant is, that the minds of the parties never met and that, therefore, no contract came into existence. After reading the evidence, we are unable to agree with counsel. It is true that the evidence is conflicting, but there is substantial evidence that the plaintiff agreed to lease not less than fifty acres and not more than eighty acres and cultivate and harvest not less than twenty-five acres of corn and twenty-five acres of soy beans, and operate a dairy, and the defendant agreed to designate said portion of the Arcadia Farm and lease it to him and furnish the team of horses and the tractor, and bear certain other expenses. They agreed that the net profits should be divided equally. The agreement of the parties in great detail was set forth in a written memorandum prepared in duplicate by the defendant. The introductory sentence is: "The following is my understanding of our agreement as outlined over the phone last night." It is true it was not signed and it bears no indication that it was the intention of any one that it should be. There is substantial evidence that the plaintiff concurred in the statement that it correctly set forth the agreement, and that he in fact did sign one copy which the defendant took. There are many circumstances corroborating the plaintiff's testimony and indicating that both parties understood that they were bound. The issue was for the jury.

(2) At the time this contract was entered into the entire Arcadia Farms was leased to one Foster, who apparently had sowed some wheat on a portion, and a dispute arose between him and the defendant as to the date of the expiration of his lease, Foster contending that his lease covered the entire year of 1948, and the defendant contending that it expired on April 1st, 1948. Foster refused to vacate, and that fact is assigned by the defendant as a legal excuse for not delivering possession of the fifty to eighty acres to the plaintiff. Counsel relies upon a line of cases of which Hannan v Dusch,

70 A. L. R. (— Va. ——, 153 S. E. 824) 141, and Snider v. Deban, 249 Mass. 59, 144 N. E. 69, are typical, holding that a lessor is under no implied obligation to put his lessee into actual possession at the beginning of the term, and that the wrongful exclusion of the tenant by a third person is no breach of any obligation of the lessor, in the absence of an express agreement by him to put the lessee in possession. An examination of the authorities discloses that there is almost an equal division on this subject. Perhaps a slight preponderance favors the English rule that it is the duty of the lessor, where the term is to begin in futuro, as in this case, to oust any one who may be in possession, so that the lessee may take peaceable possession. The state of the authorities is summarized in 32 Am. Jur., at 178 and 179:

"Although the authorities are not in accord, some courts in this country take the view that the extent of the lessor's covenant to give possession is that the possession shall not be withheld either by himself or by one having a paramount title. Under this rule, it is sufficient if the premises are open to entry without an obstacle in the form of a superior right which will prevent the lessee from obtaining actual possession. Accordingly, a lessor is not liable to a lessee for the wrongful holding over of a former tenant so as to withhold possession from the second lessee at the beginning of his term. Other authorities in this country, as well as the English courts, take the view that the implied obligation of the lessor where the term is to commence in futuro extends to a wrongful withholding of possession by a third person at the time of the commencement of the lessee's right to possession. Under this rule, the lessor impliedly covenants to put the lessee in possession at the beginning of the term as against a prior tenant wrongfully holding over; he must see that the first tenant vacates the premises at the time the lessee's right of possession accrues, and is liable in damages to the lessee if he permits that first tenant to hold over."

The Supreme Court of Ohio has not expressed itself on this subject. There have been some references to it in the decisions of the lower courts. These are cited as authorities for the text in 24 O. Jur., 880, and 881, as follows:

"The lessor is obligated not merely to give the lessee a right of possession free from any other paramount title; he is obligated also to deliver possession to the lessee. There is said to be an implied covenant on the part of the lessor to put the lessee in possession. Obviously, the lessor himself must not, by remaining in possession, prevent the lessee from

taking possession. It is his duty to eject, and he is liable to the lessee for the possession of, a tenant under a valid prior lease, or a tenant holding over wrongfully, or under color of right. Although the authorities are divided, the better view is that the lessor is liable to the lessee for the wrongful possession of any person at the commencement of the lessee's term."

One of the cases cited in support of the text is Miller v. Innes, 3 N. P. (n. s.) 50, which was affirmed by the Circuit Court in 3 O. N. P. (n. s.) 54, which was in turn affirmed by the Supreme Court in 74 Oh St, 476, without opinion. The action was for rent. The plaintiff had leased to the defendant a dwelling house for a year at a rental of $300 per year, payable in monthly installments. The lease provided that the lessee should also have the use of space in a large stable sufficient for one horse and one carriage. The lessee abandoned the premises at end of seventh month and the action was for rent for the remaining five months. The lessee defended on the ground that when he went to the stable on the first day he was refused admittance to the stable for his horse and carriage and, after subsequent attempts and refusals, he stopped any further attempts and rented another stable. The Common Pleas Court took notice of the conflict in the decisions in different jurisdictions, and then said: "In consideration of the principles and reasons adduced in these various cases I incline to the English doctrine and adopt the reasoning of King v. Reynolds, 67 Ala. 229." The court also called attention to a feature of the case that would prevent the application of the contrary doctrine, and that was the provision relating to the space in the stable for the lessee's horse and carriage, and on that subject said: "I am moreover of the opinion that in the case at bar there would be no conflict of authorities, for this reason, that by the terms of the lease the particular space in the large barn alloted to the lessee was not specified therein, and, therefore, remained to be indicated and set apart by the lessor. It thereupon became the duty of the lessor to set aside that space because the lessee would have no right to maintain any action to eject any particular person—for the reason that —he could not specify in his action for ejectment the premises to which he was entitled." The Circuit Court agreed with the Common Pleas Court in both respects, saying at page 54 of 3 N. P. (N. S.):

"Recognizing the conflict of authority on the main point, we are, however, of the opinion that the best reasoning is in favor of the contention that it is the landlord's duty to clear the way for the entrance to possession of the property by the

lessee, on the first day of his term. See opinion of Stone, Jr., in King v. Reynolds, 67 Ala., 229, 233.

"Furthermore, in the case at bar it was impossible for the lessee to get possession of the stable room, because same had not been designated and described to him."

As already noted, the Supreme Court affirmed this judgment without opinion. As there were only these two possible grounds for the lower court's decision, it would seem that the affirmance was necessarily on one or the other.

What was said in Miller v. Innes, supra, is equally applicable to the facts in this case. Here was a lease for an unidentified fifty to eighty acres in a tract of one hundred and sixty-eight acres for one farming season. What the plaintiff contracted for was possession of at least 50 acres. If he was not placed in possession, he would get nothing under the contract. If he was required to litigate to obtain possession, the farming season might have entirely passed or be so far advanced as to make possession valueless before he could obtain possession. Furthermore, in this case as in Miller v. Innes, the part he was to have had not been identified by the lessor and until it had been, no title could pass to him and he could maintain no action to recover possession against anyone.

Bexley v. Davenport, 44 S. E. (2d.) (Ga.) 388, involved a kindred principle. The owner of a storeroom and fixtures leased them to the plaintiff while they were in the possession of a purchaser of the stock of goods of a prior lessee. The plaintiff sued the purchaser of the stock of goods for rent during his occupancy. The court at page 390 said:

"However, where the owner of lands does not convey the title or an estate therein but gives the lessees only the usufruct, as in the present case, such lessees may not maintain an action for damages or one to recover possession from a tenant of the owner who is alleged to be holding over and beyond the term for which he rented the premises, but the lessees must look to the owner to place them in possession of the premises and may retain an action for damages against him for a refusal or failure to do so. 'Where the lease contains no stipulation to the contrary, there is an implied covenant on the part of the lessor that the premises shall be open to entry by the lessee at the time fixed by the lease for him to take possession and, if possession is then wrongfully withheld from the lessee, he can maintain an appropriate action against the lessor, * * *' "

It should be noted that this record does not indicate that Fost-

er's possession of Arcadia Farms was wrongful. It does show that the defendant sued him in ejectment and that the parties compromised. The issue was not decided. Certainly, according to all the authorities if Foster was in possession rightfully under a lease from Brown and the plaintiff was thereby excluded, that would be a violation of the implied term in the lease that the lessor had not done and would not do anything that would interfere with the lessee taking and holding possession.

Our conclusion is, that Foster's possession and the defendant's inability to dispossess him constituted no defense.

(3) Finally, we come to the question of the measure of damages. The court charged the jury that "The damage must flow naturally and directly from the breach of the contract, that is, it must be such as might be presumed to follow the breach if there was a breach. It must not be remote, but the proximate consequence of the breach.—In measuring the damage of the plaintiff, should you find for the plaintiff under the rules I have given you, you will take into account the profit, if any, he would likely receive as of that farming year under this contract and arrangement, had the contract not been breached."

There is evidence of the gross income that might be expected provided weather and all other conditions proved to be favorable and the size of the verdict seems to indicate that as its basis without giving the defendant his share. There is no evidence of the cost that would necessarily be incurred in producing that income. In other words, there is no evidence of the probable net profit that would have been realized. The trial court found the amount of the verdict to be excessive, but we fail to discover any basis in the evidence upon which a reduction of $1000.00 or any other sum could be predicated.

The measure of damages for violating a share-cropper's contract by refusing him entrance or later evicting him has been the subject of great diversity of decision in the various jurisdictions, but in Ohio the rule seems to have been laid down in 1866 in the case of **Rhodes v. Baird, 16 Oh St, 573,** and has never been qualified since. We quote the first three paragraphs of the syllabus:

"An action was brought on a contract, by which the defendant agreed to make a lease, for the term of ten years, to the plaintiff, of certain lands, on which to plant and cultivate a peach-orchard. The breach consisted in the failure of the defendant to make the lease, and in his causing the plaintiff, within two years from his taking possession, to be evicted from

the premises, but after the peach-trees were planted. On the trial the plaintiff was permitted to give evidence of the probable profits that might in future be realized from the orchard, judging by the number of crops and the price of peaches in the county for the last ten or fifteen years:  HELD—

"1. The evidence as to the probable future profits was incompetent to be given in chief by the plaintiff, as furnishing a basis for the assessment of damages by the jury, such evidence being uncertain and speculative in its nature, and in a great degree conjectural.

"2. To the extent that the damages depended on the loss of the use of the property for the term, its market value at the time of the eviction, subject to the performance of the contract on the part of the plaintiff, furnished the standard for assessing the damages.  If it had no general market value, its value should be ascertained from witnesses whose skill and experience enabled them to testify directly to such value, in view of the hazards and chances of the business to which the land was to be devoted."

It is the general market value, if any, of the lease or contract at the time of the breach, and if, perchance, it had no general market value, its value determined on the testimony of experts testifying directly to its value in view of the hazards and chances of the business to which the land was to be devoted. The jury was not instructed that this was the measure of damage. The evidence on the subject of profit and expense was not so limited. The only instruction given left it to the jury to base its verdict upon probable profits, which was erroneous.

We find that the court erred in its charge on the subject of the measure of damages and in the admission of evidence on the subject of damage.

It should also be noted, in view of the fact that the case must be retried, that the charge contains contradictory statements on the burden of proving a discharge by settlement. In one place, the burden is placed on the plaintiff to prove there was no settlement, and in the other place, the burden is properly placed on the defendant.

For these reasons, the judgment is reversed and the cause remanded to the trial court for further proceedings according to law.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.