W. J. BUCKLEY, Appellant,

v.

Raymond COE, Respondent.

No. 23923.

Kansas City Court of Appeals.
Missouri.

Dec. 7, 1964.

C. B. Burns, Jr., Brookfield, Harry Porter, Marceline, for appellant.

James J. Wheeler, Keytesville, for respondent.

MAUGHMER, Commissioner.

This litigation arose out of a farm operation agreement entered into by the landlord and the tenant. Plaintiff W. J. Buckley, a railroad conductor, had control, through

his wife's ownership, of a 700 acre farm located near Marceline, Missouri. The defendant Raymond Coe was a farm renter but had at one time worked for plaintiff as a hired farmhand.

After some preliminary discussions in August, 1960, the parties determined to enter upon a joint farming venture and on August 15, 1960, signed the following document relative to such agreement:·

"August 15. 1960

"CONTRACT BETWEEN W. J. BUCKLEY AND RAYMOND COE

"THIS CONTRACT TO RUN FOR A PERIOD OF TWO YEARS SUBJECT TO RENEWAL IF AGREEABLE TO BOTH PARTYS. W. J. BUCKLEY IS THE LAND OWNER AND AGREES TO PAY ALL TAXES ON LAND ALSO ALL PERMANENT IMPROVEMENTS.

"MACHINERY

"EACH AGREES TO FURNISH THE MACH HE HAS ON HAND WITH THE EXCEPTION RAYMOND COE AGREES TO FURNISH A POST HOLE DIGGER AND HAMMERMILL EITHER NEW OR A SUITABLE USE ONE AND AGREES TO FURNISH IN A REASONABLE TIME THIS TO MEAN BY JUNE 1 1961

"HOGS.

"EACH AGREES TO FURNISH ONE BOAR AND A SUITABLE AMOUNT OF SOWS TO BREED.

"CATTLE.

"RAYMOND COE HAS 15 COWS AND ONE BULL WJ BUCKLEY HAS 50 COWS AND AGREES TO FURNISH BULLS FOR REGISTERED COWS, IT IS THE INTENTION TO HAVE ONE HUNDRED REGISTERED COWS, AND WHEN EITHER OF THE COWS BELONGING TO THE ABOVE PARTYS IS SOLD HE IS TO RETAIN THE MONEY BUT ALL COWS TAKEN IN THE HERD FROM NOW ON TO BELONG TO BOTH PARTYS.

"MANAGEMENT

"INCOME AND EXPENCE WILL BE DIVEDED EQUALLY, LIVING QUARTERS WILL BE FURNISHED AND UPKEEP WILL BE PAYED BY THE LANDLORD THE LEASOR AGREES TO KEEP IT NEET. AND LOK WELL IN APPEARANCE. RAYMOND TO HAVE THE MANAGEMENT, AS TO HIREING EXTRA LABOR, HARVESTING CROPS MARKETING OF HOGS GRAIN, HAY, AND ALL CULL CATTLE, ALL REGISTERED CATTLE WILL BE MUTUALLY AGREED ON BY BOTH PARTYS, ALL LAND TO BE PUT IN CROPS WILL BE AGGREED ON.

"THIS CONTRACT CAN BE TERMINATED BY EITHER PARTY BY GIVING THE OTHER PARTY WRITTEN NOTICE, OF 60 DAY PRIOR TO MARCH 1 OF ANY YEAR.

/s/ W. J. Buckley
/s/ Raymond H. Coe"

———◆———

This document described as a "contract" is certainly no model. It is rather a glaring example of how incomplete, indefinite and inexact a so-called written contract can be. It did not even describe the farm acreage involved, and left many of the vital

details to future agreement. It was an invitation to disagreement and trouble and such was soon the result. This written agreement or contract was, however, sufficient in at least two respects: First, it bound the parties to a joint farm operation for a period of two years and, second, it gave either party the right to terminate by giving written notice 60 days prior to any March first.

About September 1, 1960, defendant moved into the tenant house on plaintiff's farm and the joint operation was under way. During the fall of 1960, defendant harvested plaintiff's growing crops. Disagreements emerged about one year later. Plaintiff expressed the opinion that defendant had not properly harvested the crops or maintained the premises and was not carrying out his part of the agreement. Defendant said plaintiff had not furnished the cows and brood sows as agreed. Three cows produced dwarf calves. There was some suggestion of Bangs Disease. Plaintiff advertised a dispersal sale for 80 head of cattle to be held on September 13, 1961 (45 cows, 15 bulls, which were plaintiff's, and 27 calves and 3 open heifers which belonged to plaintiff and defendant jointly). Defendant refused to allow plaintiff to remove the cattle from the farm premises. Thereupon plaintiff filed suit in the Circuit Court at Brookfield, was granted an injunction restraining defendant from interfering with the removal of the cattle and a receiver was appointed to sell and account for the joint property. Shortly thereafter the litigation was removed to Livingston County in another circuit and before another judge.

Plaintiff's second amended petition on which he went to trial was in seven counts. Defendant's answer and counterclaim was in three counts. The first six counts of the petition, which asked for cancellation of the contract, revision of the contract, an injunction, an accounting and appointment of a receiver, and the last two counts of defendant's counterclaim seeking an accounting and partition, were by agreement tried to the Court. The Court took same under advisement but some time later the parties signed a written stipulation which had the effect of an agreed accounting. In any event, the Court thereupon entered a judgment covering all controversies as to all counts—(petition and counterclaim)— except Count 7 of the petition and Count 1 of the counterclaim. By this judgment plaintiff was awarded the balance of $839.-03, which was in the hands of the receiver and a judgment against defendant in the sum of $808.45. No appeal was taken and the judgment has become final.

The issues raised by plaintiff's Count 7, wherein he asked damages in the sum of $3,240 for defendant's alleged negligence in harvesting and preserving plaintiff's hay and oat crop, and Count 1 of defendant's counterclaim, wherein defendant asked damages of $22,500, allegedly arising from plaintiff's unjustified breaching of the contract and the resultant lost profits to defendant, were tried before a jury. The result was a nine member verdict and a judgment for defendant in the sum of $5,775. Plaintiff has appealed. It is this part of the litigation and this part only which is before us.

It was defendant's testimony that when the cattle sale was held in September, 1961, only about 30 of plaintiff's cows had calved and so only about 30 calves were sold. He said the other 20 cows calved shortly thereafter and there was sufficient feed to take care of all of these cattle until August, 1962, the termination date of the contract. It was the testimony of defendant and others that these fifty calves would gain from 400 to 500 pounds in a year and that the animals would be worth about 25 cents per pound. This would amount to an increase of value of $100 to $125 per head. There was also evidence as to the probable value of the 1962 crop of calves if the 50 cows had been retained. Estimates were also made as to the probable value of the two pig crops which could normally be expected from the 35 brood sows, which the parties had in September, 1961. Defendant also produced testimony of the probable value of the 1962 hay, oat, bean and corn crops. On cross-

examination it developed that defendant, in 1961, harvested only 41 bushels of beans from 110 acres because of bad weather. Defendant's testimony as to his damages contained expressions of opinion as to the increased value of the calves after one year's feeding and growth—also the probable value of the 1962 crops—but did not estimate the cost of keeping the cattle for an additional year or the cost of producing the crops. In addition, 40 acres of the farm was in the soil bank and brought in $1200 in government payments which was the joint property of both parties.

 The first assignment of error is that the written contract is so vague and indefinite as to be unenforceable. As heretofore stated, the written document contains sufficient points of agreement so as to be valid and legally binding. The issues tried to the jury are, we think, standing alone, jury questions. The other questions, equitable or otherwise, were by agreement tried to the Court and ultimately disposed of under a stipulation and by agreement. Plaintiff's point that the Court, sitting in equity, should have resolved the dispute in its entirety, including those issues tried by the jury, is overruled. Plaintiff claims it was error to give Instruction No. 2 because it "does not negate the fact that defendant participated in the preparation for the dispersal sale". The instruction squarely requires a finding that the sale was held "without the agreement of defendant". This assignment is overruled.

 There remain Assignments 3 and 4. Plaintiff says only the gross selling prices of the claimed future crops and expected future livestock were in evidence with no estimate as to the cost of such production and hence a finding based thereon is speculative and not grounded upon solid, substantial evidence. Plaintiff's assessment of this expert testimony as to lost profits is essentially correct. In addition, Instruction No. 3 furnishes little guide or direction in the measurement of lost profits. It merely tells the jury to "assess his dam-

ages, if any, at a sum equal to the profits, if any, which it may find from the evidence the said Raymond Coe, in reasonable certainty, would have earned under the terms of the agreement in question". However, plaintiff has not on this feature criticized this instruction in the trial court or here, and offered no instruction more strictly limiting the measurement of damages.

Plaintiff's fourth assignment is that plaintiff's action in selling his cattle and filing suit to close up the partnership constituted notice that the contract was terminated as of March 1, 1962 (which termination right either party had by giving 60 days' notice) and therefore it was (1) error to admit evidence of damages accruing after March 1, 1962, and error to authorize the jury to award damages for any lost profits which might have accrued after March 1, 1962. The plaintiff made specific objection to such testimony when it was offered, preserved the point in his motion for new trial and presents it here.

We believe that defendant's evidence as to lost profits is substantial. The verdict of the jury, while liberal, is not so excessive as to require us to set it aside if defendant is entitled to recover the probable profits which would have accrued up until August, 1962, when the agreement by its terms, expired. On the other hand, if the actions of plaintiff in breaching the contract, terminating the agreement and filing suit in September, 1961, had the legal effect of notifying defendant of termination as of March 1, 1962, according to the terms of the contract, then this judgment must be reversed and the cause remanded for a new trial where defendant's recovery will be limited to lost profits accruing before March 1, 1962, where his evidence will be so limited and where the jury will be definitely so instructed.

Plaintiff cites two cases which he says support his position. In Bitterman v. Gluck et al., 256 App.Div. 336, 9 N.Y.S.2d 1007, the Supreme Court, Appellate Division,

New York, ruled on a two year contract of employment which gave defendant an absolute right to terminate on 30 days' notice. In that instance defendant discharged plaintiff and the court held that plaintiff was entitled to damages for only 30 days. The court said: "If the employer has the *unconditional right* to terminate the contract of employment after a certain notice, discharge has the effect of notice to terminate and damages are allowed only up to the time the contract would have terminated if notice had been given".

We quote from the syllabus in Custen v. Robison et al., 180 App.Div. 384, 167 N.Y.S. 1013: "Where defendants' contract to deliver yarns to plaintiff for manufacture into bobbins for them provided that it should continue 1½ years, and should be considered renewed for another year, unless either party gave notice in writing to the other party two weeks before expiration that renewal was not intended, but defendants breached the contract before expiration of 1½ years, they thereby gave plaintiff notice of intention not to renew, so that the contract was not for a term of 2½ years, and plaintiff could not recover damages for breach for the last 12 months of such a term".

Defendant in response to this assignment cites three cases which have to do with instructions and do not even consider this particular point.

 In our case each party had the unconditional right to terminate this agreement "by giving the other party written notice of 60 day prior to March 1 of any year". Clearly plaintiff's acts of filing suit, selling the livestock and procuring a sale and accounting of the partnership assets amounted to actual notice that he was terminating the partnership (not as of the following March 1, which he had a right to do) but as of September, when the suit was filed and the sale was held. The defendant had knowledge of this termination. In fact, defendant, in his answer and counterclaim alleged that plaintiff had terminated the partnership agreement. It is clear that plaintiff's notice of termination by these acts amounts to express notice as described in 66 C.J.S. Notice, § 4, page 638, as follows: "Express notice is that kind of actual notice which consists of knowledge actually brought personally home. * * *"

In Merrill on Notice, Vol. I, page 458, we find the following general statement: "It has been said before that notification is notice arising from the performance of some act which the law recognizes as sufficient for that purpose. * * * The formality involved may be no more than a positive statement of one's claim, position, intended action, desire, or it may take the form of an official pronouncement or edict. It may consist merely of mailing a letter or of posting up a dodger, or of publishing a manifesto in the press. * * * In the so-called notice by lis pendens it may be brought about by commencing a lawsuit. * * *"

Now, except for the termination privilege written into the contract, plaintiff, if he terminated without cause (and the jury found he did), would be liable to defendant in damages for the lost profits arising prior to August, 1962, the ending date of the contract. The trial court allowed such recovery. However, plaintiff had the absolute right to end the agreement for any reason which he deemed sufficient or for no reason whatever except his desire to do so. To avail himself of such cancellation privilege, he was required to notify defendant 60 days before March first. Plaintiff notified defendant in September, more than 60 days prior to March first. Defendant knew, regarded and pleaded that plaintiff had terminated the agreement. True, plaintiff tried to terminate as of September, 1961, rather than as of March 1, 1962. Plaintiff had no right to terminate as of September, 1961, hence defendant can recover damages but only such damages or lost profits as he can show would be reasonably expected to accrue prior to March

1, 1962, the date upon which plaintiff had a legal right to end the joint venture. We hold that plaintiff's acts were such as amounted to compliance with the contract's "notice of termination provision".

The judgment is reversed and the cause remanded for new trial with directions to limit defendant's recovery to damages, if any, accruing prior to March 1, 1962, rather than to August, 1962.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.