Duane DOPHEIDE, Appellee,

v.

Albert SCHOEPPNER, Appellant.

No. 53032.

Supreme Court of Iowa.

Dec. 10, 1968.

Hansen & Bunz, Manning, and Leighton A. Wederath, James Furey, Carroll, for appellant.

Wunschel & Schechtmen, Carroll, for appellee.

LeGRAND, Justice.

Plaintiff brought this action for damages following defendant's alleged breach of an oral farm lease. Trial to a jury resulted in a verdict of $2900.00 for plaintiff, which was reduced to $2100.00 by the trial court as a condition for overruling defendant's motion for new trial.

This remittitur was accepted by plaintiff and is not an issue here. We therefore disregard it in our consideration of the case.

Although defendant charges numerous errors as grounds for a new trial, we find his principal complaints fall into three categories:

(1) That there was no evidence of any oral lease sufficient to submit to the jury and that the evidence showed plaintiff was a mere cropper as a matter of law;

(2) That the trial court erred in submitting to the jury the question of a separate oral lease for 1966 when plaintiff neither plead nor proved such lease;

(3) That the trial court improperly instructed the jury as to the measure of damages.

For reasons set out in Division II we hold defendant is entitled to a new trial.

The evidence in this case was confined to the testimony of plaintiff and defendant. We summarize it in its form most favorable to plaintiff:

Plaintiff and defendant are neighbors. For a number of years plaintiff helped defendant doing odd jobs after school. In 1964 plaintiff had a conversation with defendant about the operation of his farm. This conversation took place around the first of July after defendant's son had died. Defendant then needed more outside help and told plaintiff that, if he helped him out that year (1964), he "would get the farm

for the following year." There were other conversations concerning the terms under which plaintiff was to work the farm. Rent was to be principally on a crop basis: half the corn; half the beans and two-fifths of the oats. The pasture and hay ground were to be cash rent—$10.00 per acre. Defendant laid out a plan as to how the fields should be planted.

Later plaintiff was called into military service. He talked to defendant about this. Defendant said he would get a hired hand while plaintiff was gone and plaintiff could take over when he returned. This became unnecessary because plaintiff got an early medical discharge and returned in time for the entire crop year.

Plaintiff, with some help from his father, did all of the farm work for 1965 with the exception of some corn planting by defendant. That was principally because defendant raised seed corn, which required special attention and with which plaintiff was unfamiliar.

Plaintiff did the cultivating and all the rest of the work with the crops. When the crops were harvested, plaintiff took them to town, had them weighed and made the division between himself and defendant. He also picked the corn and divided it according to the agreement. Defendant got half the corn. Plaintiff also combined the soybeans and then delivered them to the elevator. Defendant got half the soybeans. Plaintiff used his father's machinery in 1965 and during that year he bought a tractor, corn planter, cultivator, rotary hoe and wagon and grinder-mixer, apparently for use in 1966. After the 1965 crops were harvested (sometime in November), plaintiff plowed and disced about 15 acres on the defendant's farm at defendant's request.

Plaintiff did not live on defendant's farm and had no control over any of the buildings, nor did he pay rent for any of the buildings. Defendant told plaintiff what to plant, where to plant it, and when to fertilize. Defendant did not tell plaintiff

how to use the pasture or hay ground. He was free to use that as he pleased. Plaintiff conceded most of the work was done under defendant's direction. Plaintiff paid for the weed spray and part of the fertilizer. His father paid for the rest of the fertilizer, because, as plaintiff said, "I had no money." Plaintiff or his father paid for the seed corn. Defendant told plaintiff when to pick the seed corn. He didn't tell him when to combine the beans, nor the oats, nor did he tell him how to spray the weeds or what solution to use. Other than the operation with the seed corn, defendant made suggestions as to how to farm the land but did not attempt to control it.

Defendant admitted a conversation with plaintiff about the middle of July to make "certain farming arrangements." Defendant said, "We never came to any final understanding as to these arrangements."

Defendant concedes he gave plaintiff no notice of termination of tenancy prior to November 1 and contends plaintiff was not entitled to such notice since he was only a cropper.

I. Plaintiff's petition is in two counts. One alleges a right to compensation for specific work done at defendant's request. It is unimportant to this appeal. The other count alleges an oral lease under the terms of which plaintiff became a tenant on defendant's 125-acre farm from March 1, 1965 to March 1, 1966. Defendant does not deny he entered into some agreement with plaintiff, nor that plaintiff actually worked his farm, but asserts he was a mere cropper.

This is of vital importance as plaintiff's case is based on his right to hold over for the 1966 crop year because defendant failed to terminate his lease under sections 562.6 and 562.7, Code of Iowa, 1962.

If plaintiff was a tenant, he was entitled to such notice; if a cropper, no notice was required.

Defendant argues the matter should not have been submitted to the jury because there was no evidence upon which they could find a landlord-tenant relationship. He claims plaintiff was a mere cropper as a matter of law and his motion for directed verdict on that ground should have been sustained.

A tenant has an interest in the land and has a right of property in the crop. A cropper has no such interest and works in consideration of receiving a portion of the crop for his labor. 21 Am.Jur.2d, Crops, section 35, page 618; Paulson v. Rogis, 247 Iowa 893, 896, 77 N.W.2d 33, 35; Davis v. Burton, 126 Mont. 137, 246 P.2d 236, 237.

We cannot say plaintiff was a cropper as a matter of law. The fact there is an agreement for a division of crops between the owner of land and the person working it does not alone determine the status of the parties. What the relationship is depends upon the true intention of the parties to be determined from all of the circumstances surrounding the making of the agreement. 52A C.J.S., Landlord and Tenant § 797, page 324; 21 Am. Jur.2d, Crops, section 39, page 622; Paulson v. Rogis, supra. Where the negotiations are oral and informal and the evidence is in dispute, ordinarily a jury question as to whether plaintiff is a tenant or cropper is presented. 21 Am.Jur.2d, Crops, section 38, page 622; 52A C.J.S. Landlord and Tenant § 797, page 324; Smith v. McNew, Mo.App., 381 S.W.2d 369, 373; Hampton v. Struve, 160 Neb. 305, 70 N.W.2d 74, 78.

Defendant relies heavily on the fact plaintiff did not live on the premises and had no control over any of the buildings thereon. This is one factor to be considered but it is not of itself determinative. There are other elements, including who has the right of possession; who furnishes the supplies; who divides off the crops; how long the agreement extends; the extent of control exercised by the owner; and, if the agreement is in

writing, the use of technical words therein. 42 Iowa Law Review 650, 651, footnote 4; Davis v. Burton, 126 Mont. 137, 246 P.2d 236, 238; 52A C.J.S. Landlord and Tenant § 797(d), page 328. In Paulson v. Rogis, supra, we held the fact one did not live on the land did not necessarily make him a cropper.

In the case now before us there are some circumstances favorable to the argument plaintiff was a tenant, and others which would justify the conclusion he was a cropper. The negotiations were oral and informal; the evidence as to the intention with which the agreement was reached is both disputed and conflicting.

We agree with the trial court that under these circumstances the issue was for jury determination.

II. If the jury found plaintiff was a tenant during the 1965 crop season, it would follow he was entitled to notice of termination of such tenancy prior to November 1, 1965, under the terms of sections 562.6 and 562.7, Code of Iowa, 1962. Otherwise his right to possession of the farm would continue through the 1966 crop season on the same terms as the 1965 oral lease. This is the whole basis for plaintiff's action and is the only theory which he pleads.

His petition is short and we set out the important parts:

" *   *   * 3. That pursuant to an oral lease, the plaintiff operated the said real estate of the defendant *   *   * as a tenant during the period of March 1, 1965 to March 1, 1966, *   *   * on the following basis:

"a. One-half of all corn and soy beans harvested from said premises.

"b. $10.00 an acre for hay ground and pasture.

"d. Two-fifths of the oats harvested from said premises.

"4.   *   *   *

"5. That the defendant failed to make any written demand for possession of said real estate as required by the statutes of the State of Iowa and in fact, requested the plaintiff to plow part of the premises, which the plaintiff did.

"6. That the plaintiff was entitled to possession of the said real estate during the crop year of March 1, 1966 to March 1, 1967 and was at all times ready, willing and able to farm said premises pursuant to *said oral agreement.*

"7.   *   *   *

"8. That by reason of the defendant's withholding the possession of the real estate from plaintiff, and his refusal to allow the plaintiff to farm said premises *pursuant to the oral lease,* plaintiff has been damaged *   *   *." (Emphasis added)

It is obvious that plaintiff alleges only a single oral lease, the one made for the farm year from March 1, 1965 to March 1, 1966, and that his right to possession of the land during the following year is not based upon any new or separate lease but upon defendant's failure to give him notice of termination of tenancy prior to November 1, 1965.

His petition pleads no other lease and no other cause of action, nor is there evidence to suggest any contract except the one alleged in the petition.

Nevertheless the trial court, after properly submitting the question of defendant's relationship to plaintiff under the 1965 agreement and his right to notice under sections 562.6 and 562.7 if they should find he was a tenant, then instructed the jury on a totally different theory of recovery, one which plaintiff did not plead nor attempt to prove.

The trial court told the jury it could find an independent oral lease for 1966 separate and apart from plaintiff's right to possession of the farm for failure to terminate the 1965 lease. In various instructions the trial court said: "Further, if you have

found that the plaintiff failed to fulfill the terms of said oral agreement for the farming year 1965, then you will proceed to determine whether or not the parties entered into any oral agreement for the farming of defendant's farm for the farming year 1966, as distinct from the oral agreement in existence for the farming year 1965"; "The second proposition which the plaintiff must prove is the terms of the oral lease for the farming year 1966 * * *"; "* * * If, however, after careful consideration of the matter you have found under the evidence that the plaintiff was not a tenant upon the defendant's farm [for the farm year 1965] as that is defined to you in these instructions, you will then proceed to determine whether or not there was an oral agreement entered into between the parties for the farming of defendant's farm for the farm year commencing March 1, 1966. * * * If you find by a preponderance of the evidence that such an oral agreement did exist for the farming of defendant's farm for the farming year 1966, you will then proceed as in Instruction #15 [defining damages]; otherwise not."

These instructions permit the jury to allow recovery on a lease plaintiff does not claim he had. There is no pleading which raised this issue; there is no evidence to support it.

▮ Plaintiff's petition is limited to the assertion he was entitled to carry-over for 1966 under his 1965 oral lease because defendant failed to give the statutory notice of termination required by sections 562.6 and 562.7. He must prevail on that claim or none.

Here the jury might have found for plaintiff on *either* theory. The verdict merely found generally that plaintiff was entitled to possession of the farm for the 1966 crop season. Since this conclusion could have been based on the instructions concerning a separate 1966 lease, we must give defendant a new trial.

We have held many times it is reversible error to submit an issue not raised by the pleadings and proof. Neibert v. Stone, 247 Iowa 366, 368, 73 N.W.2d 763, 764; Perry v. Eblen, 250 Iowa 1338, 1346, 98 N.W.2d 832, 837; Wilson v. Kouri, 255 Iowa 348, 355, 122 N.W.2d 300, 304; Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1182, 136 N.W.2d 338, 341; Campbell v. Martin, 257 Iowa 1247, 1251, 136 N.W.2d 508, 511; Sorenson Health Studio No. 11 v. McCoy, Iowa, 156 N.W.2d 341, 344; Flentie v. American Community Stores Corp., 8 Cir., 389 F.2d 80, 82. See also 88 C.J.S. Trial § 382(a), page 988, § 382(b) (3), page 997; 53 Am.Jur., Trial, section 574, page 453.

Even after giving the evidence the most favorable construction it will bear for plaintiff, as we are obliged to do under Clubb v. Osborn, 256 Iowa 1154, 1161, 130 N.W.2d 648, 652, and Campbell v. Martin, supra, we find nothing in the record to support the submission of any issue of oral lease except the one alleged to have been made for the 1965 crop year.

For the reasons stated herein we reverse and remand for a new trial.

III. Since this case must be tried again, we discuss the troublesome question concerning plaintiff's proper measure of damages.

There has long been disagreement concerning this matter. Some courts limit a plaintiff to the excess of the rental value of the land over the rent agreed to be paid; others allow him to prove his actual damages, including such loss of profits as he may show with reasonable certainty.

Almost entirely because of Adair v. Bogle, 20 Iowa 238; Dilly v. Paynsville Land Company, 173 Iowa 536, 155 N.W. 971, and Groff v. Crawford, 230 Iowa 1264, 300 N.W. 521, Iowa is numbered among those states holding the true damages are measured by the excess of the rental value of the farm over the amount reserved in the lease. Yet an analysis of these three

cases suggests they do not justify that conclusion.

The Adair case did not purport to set down any arbitrary limit for damages. There (20 Iowa at page 243) we said, "It is also settled that in such an action against the landlord for damages, the *general rule* for the measure thereof is the difference between the rent reserved and the value of the premises for the term. If the value of the premises for the term is no greater than the rent which the tenant had agreed to pay, then the latter is not substantially injured, and can, *in general,* recover only nominal damages * * * but if the value of the premises is greater than the rent to be paid, the lessee is entitled to the benefit of his contract, and this will ordinarily consist of the difference between the two amounts. * * * We have said above that in *general or ordinarily,* the plaintiff, in such an action as the present, recovers the difference between the value of the use of the premises and the rent reserved.

"But he is not in all cases confined to this, as where, in addition he has sustained a particular loss. If other damages have resulted as a direct and necessary or natural consequence of the defendant's breach of the contract, these are recoverable * * *" (Emphasis in original.)

In the Dilly case, which involved a suit for wrongfully withholding possession of farm premises, we observed at page 540 of 173 Iowa, at page 973 of 155 N.W., "* * * The general rule for measurement of damage is the difference between the rent reserved and the value of the premises for the term, *and such other damages as are shown to have resulted as the direct or necessary or natural consequences of the breach of contract; * * *"* (Emphasis added.)

Neither of these cases laid down any maxim against proving loss of profits under proper circumstances. The real pronouncement in the Adair decision was twofold. First, a plaintiff should recover only such damages as have directly and necessarily been occasioned by the defendant's wrongful act or default; and second, if a plaintiff, by reasonable exertions or care on his part, could have prevented such damages, he is bound to do so; and so far as he could have thus prevented them, he cannot recover therefor.

The Dilly opinion simply said the admission of testimony concerning the probable production on the farm and the probable net profits was erroneous because "it is altogether speculative, and furnishes no substantial and sound basis upon which to estimate the plaintiff's loss."

Limited to the circumstances of that case, it appears this was undoubtedly correct. Furthermore, there, as the court pointed out, plaintiff secured another farm within a few days after the breach of lease. He occupied that farm and made no claim it was less valuable to him than the original would have been. We did not say, however, that such damages were never recoverable. At 544, 155 N.W. 971, 974, we said, "It is true that, under certain circumstances and conditions, the loss of profit may be shown in a suit founded upon a breach of contract. The uncertainty as to the amount of damages which may be allowed is not always an obstacle to their allowance. If they are such damages as were reasonably in the contemplation of the parties at the time the contract was made, they may be recovered. The difficulty in many cases arises in an effort to distinguish between the uncertainty as to the amount of damages and uncertainty as to the cause of damages. Here the damages must be traceable to a breach of the contract, and the damages allowed must be such as are traceable to such breach. If the proof offered does not lay the basis for recovery of damages traceable directly to a breach of contract, with reasonable certainty, then we say it is speculative, remote or conjectural."

We find nothing here which would serve as authority for a general rule eliminating loss of profits from consideration in all

breach of farm lease actions. Nevertheless Groff v. Crawford, 230 Iowa 1264, 1265, 300 N.W. 521, relies entirely on the Adair and Dilly opinions for this statement, * * * we are committed to the rule that measure of damages in cases of this kind is the excess of the rental value of the premises over the rent agreed upon in the lease."

We do not feel what we said in the Adair and Dilly cases justified the conclusion reached in Groff.

Incidentally we might point out here that sometimes in the opinions referred to we mention "rental value" and at others we use the term "value of the use of the premises." Contrary to some courts (Shutt v. Lockner, 77 Neb. 397, 109 N.W. 383, 384), we have held these to be synonymous. Alexander v. Bishop, 59 Iowa 572, 578, 13 N.W. 714, 717; Straight Bros. Co. v. Chicago, M. & St. P. Ry. Co., 183 Iowa 934, 947, 167 N.W. 705, 709. We mention this particularly because plaintiff argues we have never said what fair value of the use of the premises means.

Returning to the immediate dispute, we cannot approve the instruction given by the trial court on damages. That instruction included this:

" * * * You are told that plaintiff's measure of damage * * * is the excess, if any, of the rental value of the farm for the term, that is, the farming year 1966 over the rent which the defendant, Albert Schoeppner, was to receive."

"In the event you allow recovery to the plaintiff herein you should fix and determine the damage to be allowed, if any. In this connection the plaintiff claims his damage consisted of three items, that is, $2700.00 in connection with the corn, $500.00 in connection with the oats, and $450.00 in connection with the hay ground and pasture. * * * "

It will be noted the jury was told the measure of damages was the excess of the rental value over the rent agreed to be paid. The jury was then told, however, that plaintiff's damage was to be measured by the loss he claimed on three items—corn, oats, and hay ground. Certainly these were conflicting instructions; but in view of the result we reach we need not discuss this instruction further.

In view of many recent decisions, including several of our own, we feel the rule of damages in cases such as that now under consideration should be clarified. We disavow the rule which limits recovery to the excess of the rental value over the rent which the tenant has agreed to pay. Such a limitation is entirely inadequate and unrealistic. If plaintiff can recover only when he got a rental bargain—which is the only time the rental value would exceed the agreed rental—the landlord could ordinarily break his lease with impunity. We do not think our earlier cases so held.

A lease is, of course, one form of contract. 51C C.J.S. Landlord and Tenant § 2(2), page 33; Hinsdale v. McCune, 135 Iowa 682, 684, 113 N.W. 478, 479. Generally the measure of damages for breach of contract is the amount necessary to put the innocent party in the same financial position he was prior to the breach. The purpose is to compensate him for the loss which a fulfillment of the contract would have prevented. 25 C.J.S. Damages, § 74, page 843. We have frequently followed this rule and have recently so held in DeWaay v. Muhr, Iowa, 160 N.W.2d 454, 459, and citations.

When this involves a loss of profits, courts have not hesitated to permit recovery of such loss as may be established with reasonable certainty. 25 C.J.S. Damages § 43, page 742, 22 Am.Jur.2d, Damages, section 174, page 246, where it is pointed out that loss of profits must be reasonably within the contemplation of the parties at the time the contract is made before they are allowable. Again, we followed this rule in DeWaay v. Muhr, supra.

We have recently approved the allowance of loss of profits under proper cir-

cumstances in both tort and contract actions. DeWaay v. Muhr, supra; Vojak v. Jensen, Iowa, 161 N.W.2d 100, 106; Berg v. Kucharo Construction Company, 237 Iowa 478, 493, 21 N.W.2d 561, 569; Sargent v. Frank Cram & Sons, 194 Iowa 152, 155, 186 N.W. 916, 917, and citations in those cases.

We see no good reason why this same rule should not apply to litigation involving breach of a farm lease. In fact most courts hold it does. As bearing on this subject see 31 Iowa Law Review 650; 9 Drake Law Review 66, 80; Restatement, Contracts, section 331; Annotations, 104 A.L.R. 161(b); Annotations, 88 A.L.R.2d 1041(h); Carlson v. Bain, 116 Colo. 526, 182 P.2d 909, 912; Martin v. Stiers, U.S. Dist.Ct., N.C., 165 F.Supp. 163, 166; Buckley v. Coe, Mo.App., 385 S.W.2d 354, 358; Nelson v. Nelson, 249 Ala. 482, 31 So.2d 685, 687; Poppen v. Wadleigh, 235 Minn. 400, 51 N.W.2d 75, 78; Williamson v. Payne, 30 Ga.App. 652, 118 S.E. 598; Smith v. Fergus County, 98 Mont. 377, 39 P.2d 193; Fuqua v. Madewell, 25 Tenn.App. 140, 153 S.W.2d 133, 134; Barfield v. Damon, 56 N.M. 515, 245 P.2d 1032, 1037; Stewart v. Murphy, 95 Kan. 421, 148 P. 609, 610.

As illustrative of those jurisdictions holding a contrary view, see McHargue v. Scott, Ky., 305 S.W.2d 929, 931, (although this case was held to be an exception to the rule), and Mullins v. Brown, 87 Ohio App. 427, 94 N.E.2d 574, 578.

The only real objection raised to proof of such damages in these decisions—and others which agree with them—is that they are too conjectural and speculative and that the jury has no sound basis upon which to assess the dollar loss. We do not see why this is any more true in this kind of case than any other where loss of profits may be shown. When the damage cannot be shown with "reasonable certainty" or when the jury must resort to "conjecture and speculation," the issue of loss of profits should not, of course, be given to the jury. But this sound rule should not, nor was it intended to, prevent proof of loss of prof-

its when the evidence meets the requirements hereafter set out.

We now announce the rule that in cases such as the one before us, loss of profits may be shown as part of the innocent party's damages if three requirements are fulfilled:

(1) Such damages must have been within the contemplation of the parties at the time the lease was made;

(2) Such damages must be the natural and direct result of the breach; and

(3) Such damages must be established with reasonable certainty and may not be based upon speculation and conjecture.

We do not feel that this rule conflicts with our holdings in Adair v. Bogle, supra, or Dilly v. Paynsville Land Company, supra, but to the extent that it may, they are hereby overruled, as is Groff v. Crawford, supra.

No question of mitigation was raised or considered in this matter.

For the reasons set out in Division II this case is reversed and remanded for a new trial.

Reversed and remanded.

All Justices concur.