In re David V. ROSENTHAL, Debtor.

BROOKLINE TRUST COMPANY, Plaintiff,

v.

David V. ROSENTHAL, Defendant.

Bankruptcy No. 82–00894–BKC–SMW.
Adv. No. 82–0920–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

March 18, 1983.

A. Rodger Traynor, Jr., Miami, for plaintiff.

John L. Britton, Fort Lauderdale, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon a Complaint to Determine Dischargeability of a Debt filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

On February 1, 1980, the debtor executed a demand promissory note in the face amount of $121,961.07, payable to the plaintiff herein, Brookline Trust Company (hereinafter "the Bank"). That note represented the consolidation of and renewal of four previous loan transactions between the parties, as well as an advance to the debtor of approximately $20,000 in additional funds. On February 22, 1980, the Bank paid a Letter of Credit which had been applied for by JVH Corp. That payment by the Bank, in the amount of $48,157.35 was later reduced to a demand promissory note in the aforesaid amount, wherein JVH Corp. was the maker and the debtor herein was an endorser in his individual capacity. By his petition in bankruptcy, the debtor now seeks a discharge of these debts owed to the Bank, along with interest that had accrued as of the time of the filing of this petition in an amount in excess of $130,000.

The Bank has objected to the dischargeability of these debts, pursuant to Bankruptcy Code § 523(a)(2)(B), contending that the aforesaid transactions represented extensions of credit which were induced by the debtor's use of a materially false financial statement dated November 5, 1979. For the reasons more specifically stated hereinafter, the Court finds that the Bank has proven each of the necessary elements under § 523(a)(2)(B) of the Bankruptcy Code and that the objection to dischargeability should be sustained.

The Court finds that the two promissory notes in question represent an "extension, renewal, or refinance of credit" as between these parties. The Court also finds that the aforesaid transactions were induced by this debtor's use of a statement in writing which was materially false with respect to the debtor's financial condition. The Court further finds that the Bank reasonably relied upon the November 5, 1979, financial statement in entering into these transactions, and the Court further finds that the debtor, David V. Rosenthal, caused the financial statements to be published with the intent to deceive the Bank.

The Court finds the evidence susceptible of no other interpretation but that the November 5, 1979, financial statement of this debtor was materially false in numerous respects. Among other particulars, its falsity was demonstrated by the overstatement of the debtor's income for the year ending December 31, 1978, by more than 300%, his listing of "100% ownership" of businesses in which the debtor himself had no ownership interest, which were only partially owned by relatives, and which were of negligible or negative net worth. The debtor also listed as a major asset his ownership interest in a luxury condominium apartment in Boston which was in fact owned by a nominee trust of which only the debtor's sons were the beneficiaries. The debtor also had no reasonable basis for the $250,000 asset described as "automobiles and other personal property", regardless of whether that asset was his own, his spouse's, or property held jointly with her.

The liabilities side of the financial statement was similarly false, having omitted federal income tax liabilities in excess of $50,000 for which the debtor had recently entered into an installment payment agreement with IRS. The debtor also omitted a $50,000 debt owed to the Hong Kong and Shanghai Banking Corporation which he had just weeks before been called upon to pay pursuant to his personal guarantee of the debt of a defunct corporation. A similar guarantee for a $32,000 debt which the debtor had recently been called upon to pay to the Commonwealth Bank of Boston was

also omitted from the financial statement. The debtor's $24,000 charitable subscription to a Boston philanthropical organization was excluded because the debtor professed his belief at trial that such a debt was not enforceable. In summary, the net worth which the debtor showed on the November 5, 1979, financial statement in excess of $1,000,000 was in truth a substantial negative net worth.

In view of the enormity of the foregoing falsehoods and in light of the testimony of both the debtor and his personal secretary with respect to his business acumen, financial sophistication, and genuine personal wealth in earlier years, the Court finds that under the circumstances the debtor did act with the intent to deceive. Indeed, the subject financial statement was "made with such reckless disregard of the truth that the requisite intent to deceive may be imputed", *In Re: Kimberly,* 4 CBC 2d 1445, 13 B.R. 145 (Bkrtcy.S.D.Fla.1981). Where, as here, the false statement is knowingly or recklessly made, the intent to deceive "may logically be inferred", *In Re: Matera,* 592 F.2d 378 (7th Cir.1979). The Court finds the proof of this debtor's intent to deceive to be clear and convincing.

 The evidence showed that the president of plaintiff bank and this debtor had been acquaintances for many years and had socialized with their respective spouses, eaten lunch together, and played golf together dozens of times. The debtor had also been involved in borrowings through his other business ventures at other banks where plaintiff's president had previously been the senior loan officer in charge. While the plaintiff's president testified that he had the same or similar relationships with twenty or thirty of his other customers, the debtor argues that this "friendship" with the plaintiff's president defeats the element of the plaintiff's reliance on the financial statement. The Court disagrees and finds that the observations of the plaintiff's president with respect to the debtor's lifestyle and financial habits over the years makes even more reasonable the plaintiff's reliance on the debtor's financial statement, *In Re: Matera, supra.*

The evidence further showed that shortly after the loans in question had been funded, the executive committee of the plaintiff's board of directors reviewed and specifically approved these transactions. The testimony of one of those members of the executive committee was clear to the effect that major reliance was placed upon the debtor's personal financial statement in the executive committee's approval of the loans. Moreover, had the debtor's actual negative net worth been known, the demand notes would have immediately been called. Absent even a suggestion in the evidence that the members of plaintiff's executive committee were "friends" of the debtor, the Court finds that this creditor did have a "meaningful and reasonable reliance" on the subject financial statement, *In Re: Sutmire,* 2 B.R. 105 (Bkrtcy.M.D.Fla.1979).

A final judgment will be entered in accordance with these findings of fact and conclusions of law.