In the Matter of Herman B. ARCHER and Mary A. Archer, Debtors.

MASSEY–FERGUSON CREDIT CORPORATION, Plaintiff,

v.

Herman ARCHER, Defendant.

Bankruptcy No. 83–51311–Mac. Adv. No. 84–5028.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Nov. 15, 1985.

Ward Stone, Jr. and James P. Smith, of Arnall Golden & Gregory, Macon, Ga., for plaintiff.

Sharon R. Jones, Milledgeville, Ga., for defendant.

## MEMORANDUM OPINION ON OBJECTION TO DISCHARGEABILITY OF DEBT

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On December 9, 1983, B. Herman Archer and Mary A. Archer, Debtors, filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. On March 27, 1984, Massey-Ferguson Credit Corporation, Plaintiff, filed an "Objection to Dischargeability of Debt" against Herman Archer, Defendant. The complaint alleges that Defendant made certain false representations to Plaintiff upon which Plaintiff relied. The complaint also alleges that, with the intent to deceive Plaintiff, Defendant delivered to Plaintiff certain applications containing materially false statements which Plaintiff relied upon in extending credit to Defendant. Plaintiff contends that the debt owed to Plaintiff, which arose out of these transactions, is nondischargeable under section 523(a)(2) of the Bankruptcy Code. 11 U.S.C.A. § 523(a)(2) (West 1979).

Plaintiff's complaint came on for trial on August 6, 1984. On September 6, 1985, Debtors' case was converted to a Chapter 7 proceeding under the United States Bankruptcy Code. The Court, having considered the evidence presented at trial and the arguments and briefs of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

For the past twenty years, Defendant has farmed in Washington County, Georgia, and conducted business with Welborn Davis, who did business under the name of Davis Tractor Company. Defendant purchased and financed farming equipment through Davis Tractor Company. During this period, Defendant had no actual knowledge of Mr. Davis' financial affairs or of his actual relationship with Plaintiff.

On June 16, 1980, Defendant purchased a combine from Davis Tractor Company. In order for him to obtain financing, Defendant submitted an Application for Credit and a Retail Installment Contract and Security Agreement. He signed both without reading them and while they were blank. The Retail Installment Contract and Security Agreement contained the following provision above the signature line in bold print: "NOTICE TO THE BUYER 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE." [1] It is apparent from

---

1. All of the Applications for Credit and Retail Installment Contract and Security Agreements used in the three transactions in this adversary proceeding are standard printed forms and are identical except for the information written in the blanks. All of the Retail Installment Contract and Security Agreements contain the read-before-you-sign instruction.

the evidence that it was a fairly common practice for farmers in the Washington County area to sign such documents in blank when they were purchasing farm equipment from Davis Tractor Company. After signing the Application for Credit in blank, Defendant left the application with Mr. Davis who told Defendant that, because Davis Tractor Company's secretary was not available, Mr. Davis would fill out the application later.

When Mr. Davis subsequently filled out Defendant's Application for Credit, he filled it out with false information. The June 16, 1980, Application for Credit incorrectly showed that Defendant owned 500 acres of land, owned two automobiles and four trucks valued at $40,000, and had 1,300 acres of land under cultivation. The June 16, 1980, Retail Installment Contract and Security Agreement incorrectly showed that Defendant had traded in a John Deere 55 combine when in fact he traded in a 175 Massey-Ferguson tractor. The terms of the Retail Installment Contract and Security Agreement also show that Defendant was to make four installment payments of $8,620.92, while it is Defendant's testimony that he understood he was to make only three payments.

Mr. Davis assigned the Retail Installment Contract and Security Agreement to Plaintiff. Plaintiff performed its standard credit check procedure on the application. Pursuant to this procedure, employees of Plaintiff checked the accuracy of the application and reviewed its credit terms. Credit bureau reports, Plaintiff's previous experience with Defendant, previous credit investigations of Defendant, and the nature of the present transaction were reviewed. Ms. Kuhling, a regional collector with Plaintiff, testified that Plaintiff relied on the information contained in this application in extending credit to Defendant.

On July 24, 1980, Defendant purchased a KMC Roto Tiller and a Bush Hog Rotary Cutter from Davis Tractor Company.

Once again, Defendant signed a blank Application for Credit and a blank Retail Installment Contract and Security Agreement without reading them. After the transaction, Mr. Davis or his bookkeeper filled in the documents. Instead of listing Defendant's assets and liabilities, a reference was made on the Application for Credit, which stated that the information was "in file." The application did specifically state that Defendant owned 500 acres of land when Defendant owned no land.

Mr. Davis assigned the Retail Installment Contract and Security Agreement to Plaintiff, and Plaintiff performed its standard credit check. The testimony establishes that Plaintiff relied on the Application for Credit submitted with the Retail Installment Contract and Security Agreement and extended the requested credit to Defendant.

Defendant purchased a No Till Ripper and KMC Planters from Davis Tractor Company on May 15, 1981. Defendant once again signed a blank Application for Credit and a blank Retail Installment Contract and Security Agreement without reading them. Mr. Davis subsequently filled in the blanks with false information. The application contained the false information that Defendant owned 500 acres of land, owned two automobiles and four trucks valued at $60,000, owned land and a home valued at $200,000, and had 1,300 acres of land under cultivation. The Retail Installment Contract and Security Agreement incorrectly stated that one of the machines purchased had dual wheels instead of single wheels.

Mr. Davis also assigned this Retail Installment Contract and Security Agreement to Plaintiff. Because Defendant then owed Plaintiff in excess of $50,000, Plaintiff analyzed more closely Defendant's outstanding credit with Plaintiff and reviewed Defendant's assets and liabilities that were listed on the Application for Credit.[2] On May 20, 1981, Plaintiff contacted the Farmers

---

**2.** This was Plaintiff's standard credit procedure when an applicant's debt to Plaintiff exceeded $50,000.

Home Administration because it was listed as a creditor of Defendant in the amount of $60,000. The Farmers Home Administration reported that Defendant owed them approximately $66,000 on various loans. The testimony establishes that Plaintiff relied on the Application for Credit in extending credit to Defendant. The testimony also establishes that if the application had been accurate and had shown that Defendant did not own 500 acres of land, Defendant would not have received financing.

The June 16, 1980, the July 24, 1980, and the May 15, 1981, Retail Installment Contract and Security Agreements all contained statements to the effect that installments were payable to Plaintiff at its Atlanta, Georgia, office. Defendant, however, was in the habit of making his installment payments to Plaintiff at Davis Tractor Company. Defendant was under the impression that Mr. Davis was Plaintiff's agent and could properly collect payments. The farmers in the Washington County area also thought that Mr. Davis "was Massey-Ferguson" because he had the Massey-Ferguson logo on his truck and his clothing; he sold Massey-Ferguson equipment; and he collected their payments.

From 1978 onward, Plaintiff maintained an office at Davis Tractor Company for Plaintiff's collection representative and kept a telephone there in its name. Plaintiff's collection representative knew that farmers were submitting payments directly to Mr. Davis even though such actions were in violation of Plaintiff's and Mr. Davis' financing agreement. Plaintiff's collection representative actively sought Mr. Davis' help in collecting payments and turned over accounts to Mr. Davis even after Mr. Davis was notified that such activity violated their financing agreement.

Sometime after the three transactions involved in this adversary proceeding occurred, Plaintiff discovered that Mr. Davis had overfinanced numerous contracts which had been assigned to Plaintiff. It is apparent from the evidence that Mr. Davis was engaged in a number of questionable transactions which adversely affected Plaintiff. Massey-Ferguson, Inc.[3] terminated Mr. Davis' dealership agreement in August of 1982. Plaintiff never formally terminated its relationship with Mr. Davis, but Mr. Davis' actions violated his financing agreement with Plaintiff.

When Defendant filed his petition for bankruptcy, he owed Plaintiff approximately $75,000 because of the transactions involved in this adversary proceeding. Defendant voluntarily abandoned to Plaintiff the farming equipment securing this debt. This equipment had not been liquidated at the time of trial, but testimony presented at trial revealed that it would not cover the entire debt owed Plaintiff.

## CONCLUSIONS OF LAW

■ The issue before the Court is whether Defendant's debt to Plaintiff is excepted from discharge under section 523(a)(2)(A) or (B) of the Bankruptcy Code. These provisions provide:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance [sic] of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

---

**3.** The Court notes that Massey-Ferguson, Inc. and Plaintiff are two separate legal entities, both of which conducted business with Davis Tractor Company. Massey-Ferguson, Inc. manufactures farm equipment. Plaintiff finances the purchase of this farming equipment and on occasion finances the purchase of other manufacturer's equipment.

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C.A. § 523(a)(2)(A) and (B) (West 1979). As the creditor objecting to the discharge of a debt, Plaintiff has the burden of proving that Defendant is not entitled to have the debt discharged. *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir.1982).[4] *See also Lowe v. Roberto's, Inc. (In re Roberto's, Inc.)*, 18 B.R. 551, 555 (Bankr.S. D.Fla.1982); *Maco Federal Credit Union v. Adair (In re Adair)*, 17 B.R. 456, 460 (Bankr.N.D.Ga.1980).

The Court will first address section 523(a)(2)(B). In order for this Court to find Defendant's debt nondischargeable under this section, Plaintiff must prove six elements:

1) a debt for obtaining money,

2) by use of a statement in writing,

3) that is materially false,

4) respecting the debtor's financial condition,

5) on which the creditor reasonably relied, and

6) published by the debtor with intent to deceive.

*In re Coughlin*, 27 B.R. 632, 635, 10 Bankr. Ct.Dec. 266, 268 (Bankr. 1st Cir.1983).

The Court finds that Plaintiff has met its burden of proof on the first four elements. Defendant incurred a debt to Plaintiff because he acquired farm equipment through Plaintiff's financing. Defendant obtained credit by the use of Applications for Credit, which are written statements signed by Defendant. Defendant admits that the applications are materially false. The applications all relate to Defendant's financial condition.

Under the fifth element, Plaintiff must prove that it reasonably relied on the applications in extending credit to Defendant. The Court finds from the evidence that Plaintiff relied on Defendant's financial statements. A question remains of whether Plaintiff's reliance was reasonable. "It is plain that the word 'reasonable' is not self-defining, and can be employed meaningfully only with reference to a particular context.... Consequently, courts construing the Act and the Code have employed a case-by-case approach to the reasonableness issue." *Telco Leasing, Inc. v. Patch (In re Patch)*, 24 B.R. 563, 566 (D.Md.1982) (citations omitted).[5]

In considering the reasonableness element, the Court is persuaded that the Applications for Credit were the basis upon which Plaintiff decided to extend credit. The applications represented an affirmation by Defendant that the information set forth was true and correct. Plaintiff used the information in the applications as the starting point for its standard credit check on each of the transactions. In performing this check, Plaintiff contacted the local credit bureau and, in one instance, the Farmers Home Administration.[6] None of these sources revealed that Defendant's applications were false. It is apparent that Plaintiff was not aware that Mr. Davis accepted the applications in blank and subsequently filled them in with false information. In fact, Mr. Davis' actions directly violated the financing agreement between Plaintiff and Mr. Davis.[7] The Court con-

---

4. Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

5. For a discussion of standards employed by courts, see *Telco Leasing, Inc. v. Patch (In re Patch)*, 24 B.R. 563, 566–67 (D.Md.1982). *See also J.C. Penney Co. v. Bonefas (In re Bonefas)*, 41 B.R. 74, 79 (Bankr.N.D.Iowa 1984).

6. Congress wanted creditors to use "other sources of information, such as credit bureau reports, to verify the accuracy of the list of debts." *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985).

7. One of the provisions that Mr. Davis violated under Plan A of the Retail Financing Agreement was provision 10(a)(iii). Under this provision, Mr. Davis specifically warranted that the applications he submitted to Plaintiff contained information and statements that were true to the best of his knowledge. Mr. Davis also violated provisions under the other part of the Retail

cludes that Plaintiff was entitled to rely on the statements contained in the applications and that such reliance was reasonable.[8]

Lastly, Plaintiff must prove that Defendant caused the applications to be made or published with the intent to deceive Plaintiff. Plaintiff asserts that Defendant's reckless conduct establishes an intent to deceive. Regarding intent to deceive, Collier on Bankruptcy states:

It must be shown that the debtor's alleged false statement in writing was either knowingly false or *made so recklessly as to warrant a finding that he acted fraudulently.* The debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts....

3 Collier on Bankruptcy ¶ 523.09[5][b] (15th ed. 1985) (footnotes omitted) (emphasis added).[9]

In *In re Coughlin*,[10] the court concluded that the debtor's conduct in that case supported a finding that the debtor "acted with reckless indifference to the accuracy of the information in the application[,]"[11] and therefore the plaintiff had established the debtor's intent to deceive under section 523(a)(2)(B). *In re Coughlin,* 27 B.R. at 636, 10 Bankr.Ct.Dec. at 268. In that case, the debtor signed a financial statement, prepared by a third party, without reading it. The financial statement contained totally inaccurate financial figures upon which

the lender relied in extending credit to the debtor.

In this case, Defendant, who had considerable experience in purchasing and financing farm equipment, did not read any of the applications before signing them, and he signed them knowing they were entirely blank. Defendant gave the signed applications to Mr. Davis to fill out, with the knowledge that Plaintiff would rely on the information contained in the applications when determining whether to extend Defendant financing. Defendant gave the applications to Mr. Davis in spite of the fact that he did not remember when, if ever, he had given Mr. Davis information about his financial affairs. Without such information, Defendant had no reasonable grounds to believe that Mr. Davis would accurately and truthfully fill out the applications. Defendant also made no effort to see what financial information Mr. Davis provided in the applications. *See David v. Annapolis Banking & Trust Co.,* 209 F.2d 343, 344 (4th Cir.1953). If Defendant had reviewed the applications, Defendant would have discovered the false information. The Court cannot allow Defendant to avoid responsibility for the natural consequences of his reckless conduct on the basis that Mr. Davis, not Defendant, actually supplied the false information. Because of his reckless indifference, Defendant effectively allowed Mr. Davis to provide the false information upon which Plaintiff subsequently relied. The Court, therefore, concludes that De-

Financing Agreement. Under one of these provisions, Mr. Davis represented that the contracts which he submitted to Plaintiff contained no untrue information or statements, and that the Applications for Credit accompanying the contracts contained no untrue statements.

8. The mere fact that the lender makes an independent investigation does not preclude its relying upon a false statement. *In re Applebaum,* 11 F.2d 685, 686 (2d Cir.), *cert. denied,* 273 U.S. 712, 47 S.Ct. 102, 71 L.Ed. 853 (1926).

9. *See also Brookline Trust Co. v. Rosenthal (In re Rosenthal),* 29 B.R. 495, 497 (Bankr.S.D.Fla. 1983); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kimberly (In re Kimberly),* 13 B.R. 145, 146, 4 Collier Bankr.Cas.2d 1445, 1446 (Bankr.S. D.Fla.1981).

10. 27 B.R. 632, 10 Bankr.Ct.Dec. 266 (Bankr. 1st Cir.1983).

11. The court stated that:

[A] showing of unknowing inaccuracy is not enough to establish intent to deceive, ... [but] actual knowledge of the falsity of the financial information is not required.... A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement by the debtor.... Intent to deceive is present when the debtor has "seen the financial statement and the errors were such that he knew or should have known of their falsity."

*In re Coughlin,* 27 B.R. at 636, 10 Bankr.Ct.Dec. at 268 (citations omitted).

fendant acted with such reckless indifference to and disregard for the accuracy of the information contained in his applications that the Court finds that Defendant had intent to deceive within the meaning of section 523(a)(2)(B). *See Brookline Trust Co. v. Rosenthal (In re Rosenthal),* 29 B.R. 495, 497 (Bankr.S.D.Fla.1983); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kimberly (In re Kimberly),* 13 B.R. 145, 146, 4 Collier Bankr.Cas.2d 1445, 1446 (Bankr.S.D.Fla.1981).

The Court concludes that Defendant's debt to Plaintiff is nondischargeable because Plaintiff has met its burden of proof under section 523(a)(2)(B). Because the Court reaches this conclusion under section 523(a)(2)(B), it is unnecessary to address Plaintiff's assertions under section 523(a)(2)(A). From the evidence presented to the Court, the Court cannot determine the amount of the nondischargeable debt. Therefore, the Court will direct that the parties confer within thirty days from the date of this order and attempt to agree upon the amount of the nondischargeable debt. At the conclusion of the thirty days, the Court will schedule an additional evidentiary hearing if the parties cannot stipulate to the amount of the nondischargeable debt.

An order in accordance with this opinion is attached hereto.

ORDER

Upon the attached and foregoing findings of fact and conclusions of law; it is

ORDERED that the debt of Herman Archer, Defendant, to Massey-Ferguson Credit Corporation, Plaintiff, is determined to be nondischargeable in bankruptcy in an undetermined amount; and it is further

ORDERED that the parties confer within thirty days from the date of this order and attempt to agree upon the amount of the nondischargeable debt; and it is further

ORDERED that should the parties fail to reach a stipulation as to the amount of the nondischargeable debt, the Court will

schedule an evidentiary hearing; and it is further

ORDERED that this order be entered on the docket on the date set out below.

SO ORDERED this 15th day of November, 1985.