In the Matter of Max Leon
HILLIGOSS and Marilyn
L. Hilligoss, Debtors.

Appeal of CENTRAL NATIONAL
BANK OF MATTOON.

No. 87–2930.

United States Court of Appeals,
Seventh Circuit.

Submitted May 20, 1988.[*]

Decided June 13, 1988.

Kenneth L. Bast, Kidwell, Cummins &
Bast, Mattoon, Ill., for debtors.

Nancy Menard Riddle, Reno O'Byrne &
Kepley, P.C., Champaign, Ill., for appellee.

Before CUMMINGS and POSNER,
Circuit Judges, and ESCHBACH,
Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Central National Bank of Mattoon (the "Bank") as intervenor seeks to reverse the district court's affirmance of a bankruptcy court's order, 69 B.R. 781 (1986), directing James R. Geekie, the trustee in bankruptcy, both to set aside a landlord's lien upon crops grown on forty acres leased by the debtors Max Leon and Marilyn L. Hilligoss from L.H. Monke and to take no action regarding 437 acres of crops in possession of Avey Farms, Inc. ("Avey"). We dismiss the appeal as to Monke's claim for lack of jurisdiction and affirm the appeal as to Avey's claim.

This case concerns whether Geekie should set aside two landlord's liens upon the corn and bean crops growing when Hilligoss filed his bankruptcy petition. When he filed for bankruptcy liquidation under Chapter 7 on September 9, 1985, Hilligoss was a farm tenant on land owned by Monke on a cash rent basis of forty acres for $5,800, half ($2,900) of which had already been paid. He was also a farm tenant on a crop share basis of approxi-

* The parties stipulated to waive oral arguments in this case, and therefore the appeal was sub-mitted for decision on the briefs and record. See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f).

mately 437 acres of land owned by Avey and its vice president Richard A. Black.

On September 27, 1985, Geekie first filed his "Petition Authorizing Harvesting, Storage, and Sale of Crops" in the bankruptcy court. That court, on October 15, 1985, authorized Geekie to do "everything necessary" with the crops, and to hold the balance of the proceeds until the issues involved in the alleged security interest of the Bank, the largest unsecured creditor in the case, could be resolved. The Bank had taken a second mortgage on the Hilligoss residence during the Spring of 1985 to secure the sum of $14,400.

Section 545 of the bankruptcy code governs this case, of which the pertinent Sections 545(3) and (4) provide as follows:

> The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (3) is for rent; or
>
> (4) is a lien of distress for rent.

11 U.S.C. §§ 545(3) and (4). Under Illinois law, a landlord's lien for rent due is a statutory lien, see Ill.Rev.Stat. ch. 110, ¶ 9–316 (1985), which could be set aside by Geekie as trustee. For a landlord's lien on crops to arise, there of course had to be a landlord-tenant relationship between the relevant parties. Such a relationship could be evidenced by a written lease containing words of demise and a description of the property to be leased. See, e.g., Nat'l Distillers v. First Nat'l Bank, 804 F.2d 978 (7th Cir.1986) (construing ambiguities in lease under Illinois law). The bankruptcy court found a landlord-tenant relationship between Monke and Hilligoss but not between Avey and Hilligoss. Accordingly, the court ordered Geekie to set aside Monke's landlord's lien upon Hilligoss' crops on the forty acres leased by Monke. Furthermore, Monke was to petition the court for payment of the lease rental as a cost of administration. See 11 U.S.C. § 503(b)(1)(A). The court also held that

since Avey had possession of one-half of the crops it was entitled to under its crop share arrangement with Hilligoss, there was no landlord's lien to be set aside. In reviewing the legal conclusions determined by the bankruptcy court de novo, we must defer to the factual findings of that court. Bankruptcy Rule 8013;[1] In re: Agnew, 818 F.2d 1284 (7th Cir.1987). With that standard in mind we review the Bank's assertions of error on appeal.

*The Monke Claim*

Upon construing the lease between Monke and Hilligoss, the bankruptcy court determined that a landlord-tenant relationship existed between the two parties, and therefore that Monke had a landlord's lien on the forty acres of crops that could be set aside by the trustee pursuant to Section 545. The court made no order concerning the award of costs of administration to Monke. Rather, the court suggested that

> the rent provided for in the [Monke] lease may well be a cost of administration under 11 U.S.C. § 503(b)(1)(A), as an actual, necessary cost and expense of preserving the estate. See 15 *Collier on Bankruptcy*, 503.04 at 503–20 (15th ed. 1985).
>
> The Monkes should file a request with the Court that their claim for $2,900 be allowed as an administrative expense, so that the matter may be noticed and set for hearing as provided by § 503(b).

(Bank's Br. at 9). The district court here correctly determined that it had no jurisdiction to review this part of the bankruptcy court's order, for it made "no adjudication of costs of administration. All the order does is direct the trustee to set aside Monke's claim." (Bank's Br. at 15). Any appeal of such an obviously non-final order was frivolous, and contentions of this character are sanctionable under Fed.R.App.P. 38. See *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 447 (7th Cir.1988). Before imposing sanctions, in addition to finding

**1.** This rule provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

an appeal frivolous, we must also determine whether the case is appropriate for imposing a penalty for abusing appellate procedure. *Flip Side Productions v. Jam Productions*, 843 F.2d 1024 (7th Cir.1988).

■ On appeal to this Court, the Bank's brief simply rehashes the identical argument regarding the Monke claim it made to the district court. It completely failed to address the issue of finality even when it was raised in Monke's responsive brief. This inadequate submission demonstrates that this Court should award attorney's fees and costs against the Bank for vexatiously pursuing a premature appeal of an obviously unappealable order. See *Maneikis v. Jordan*, 678 F.2d 720 (7th Cir. 1982), certiorari denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386; see also *Hays v. Sony Corp.*, 847 F.2d 412, 419 (7th Cir. 1988).

Without citing any supporting authority, Monke claims that the Bank's appeal from the bankruptcy court order should be dismissed for failure to name him as a party to the order in the Bank's notice of appeal to the district court, which listed only Hilligoss, Geekie, and Avey as "parties to the order appealed from" (Br. 9 and Supp.App. 4).[2] It is true that Bankruptcy Rule 8001 and Official Form No. 35 maintain such a requirement, but neither has been mentioned in Monke's brief and therefore will not be considered here, particularly since Monke does not assert any prejudice from noncompliance.

Recently, this Court considered Rule 3(c) of the Federal Rules of Appellate Procedure, which requires that the notice of appeal to courts of appeals specify the party taking the appeal and that "an appeal shall not be dismissed for informality of form or title of the notice of appeal." *Hays, supra*, at 414–415; see also *Chathas v. Smith*, 848 F.2d 93, 94–95 (7th Cir.1988) (court denies motion to amend notice of appeal). In *Hays*, this Court refused to dismiss an appeal from sanctions imposed on an attorney due to his failure to name himself as the appellant. *Id.* In this case, unlike *Hays*, there is no contention that the Bank's omission misled Monke and Rule 3(c) only covers the failure to name "the party or parties taking the appeal" and says nothing about appellees. For these reasons, this Court will dismiss the Bank's appeal of Monke's claim for lack of a final judgment rather than for want of a proper party appellee.

*The Avey Claim*

■ The bankruptcy court determined that the Avey–Hilligoss relationship was a sharecropping operation wherein the landowner and the debtor combined their joint efforts and resources to produce crops. Because there was no landlord-tenant relationship, Avey thus had no landlord's lien to be set aside. While the evidence presented below was somewhat sketchy— consisting only of statements of counsel and documents of record—the district court nevertheless affirmed the bankruptcy court's findings of fact.

Illinois law, which determines the nature of property interests of the parties in this case, see *In re: Xonics Photochemical*, 841 F.2d 198 (7th Cir.1988); *Hazen v. Hospitality Assoc.*, 6 B.R. 778 (Bankr.D.Or. 1980), directs that while "[a] tenant has an interest in the land and a right of property in the crop ... [a] cropper has no such interest and works in consideration of receiving a portion of the crop for his labor." *Estate of Flowers*, 95 Ill.App.3d 333, 336, 50 Ill.Dec. 899, 901, 420 N.E.2d 216, 218 (4th Dist. 1981) (citing *Dopheide v. Schoeppner*, 163 N.W.2d 360, 362 (Iowa 1968)); but see Grossman & Fischer, *The Farm Lease in Bankruptcy: A Comprehensive Analysis*, 59 Notre Dame L.Rev. 599, 605 (1984) (criticizing *Flowers* as creating confusion by encouraging courts to give different interpretations to essentially identical contracts). Thus a sharecropper is an employee rather than a tenant. See *id.* Focusing on the circumstances of Hilligoss' possession, the bankruptcy court inferred that the parties intended their relationship to be a sharecropping arrangement. See

---

2. We are obligated to consider this jurisdictional issue even though Monke failed to raise the notice question below. *Ragsdale v. Turnock*, 841 F.2d 1358, 1364 n. 5 (7th Cir.1988).

generally *Alwood v. Ruckman*, 21 Ill. 200 (1859); *Chase v. McDowell*, 24 Ill. 237 (1860); *Dixon v. Niccolls*, 39 Ill. 372 (1866); *Wheeler v. Sanitary District*, 270 Ill. 461, 469–70, 110 N.E. 605 (1915). Our review of the evidence presented at the bankruptcy hearing sustains this conclusion.

The *Dopheide* case relied on by the Illinois Appellate Court in *Flowers* listed the following elements to consider in assessing the parties' intent, which would normally be implied rather than express: (1) who lived on the premises; (2) who controlled the buildings; (3) who had the right to possession; (4) who furnished supplies; (5) who divided the crop; (6) the length of the agreement; (7) the extent of the landowner's control over the operation; and (8) the words used in the agreement, if written. 163 N.W.2d 360, 362–63. The five enumerated findings of fact[3] found by the bankruptcy court appear to be based on credible evidence and track the factors in *Dopheide*. Avey never relinquished its right of possession of the 437 acres farmed by Hilligoss. Moreover, Avey harvested the growing crops in the Fall of 1985 after Hilligoss filed for liquidation. These crops were divided in the field. Futhermore, Avey repaired the buildings, tile, and fencing on the property. Finally, Avey paid for one-half of the farming supplies which included the seed, fertilizer and chemicals.

Notwithstanding the above factors, the Bank's brief chiefly focuses on a notice filed by Avey in the bankruptcy court on October 8, 1985, which stated (Br. 12):

"You are hereby notified that Avey Farms Inc. has elected to terminate your lease of the farm premises now occupied by you, being lands described on Exhibit 'A' attached hereto and made a part hereof, and you are hereby further notified to quit and deliver up possession of the same to the undersigned no later than the end of the lease year, the last day of such year being February 28, 1986."

This bare statement supposedly indicates that there had to be a landlord-tenant relationship due to the existence of a lease. However, when viewed against the other factors described earlier regarding the possession and the division of costs and supplies, Avey's notice does not require us to hold the bankruptcy court's finding of a sharecropping relationship to be clearly erroneous. The Bank as intervenor had the burden of proof to establish that the parties intended to be landlord and tenant, and its failure to offer any real evidence to the contrary at the bankruptcy hearing ultimately dooms its appeal.

Accordingly, the part of the bankruptcy order concerning Avey is affirmed and the part of the order regarding Monke is dismissed for want of appellate jurisdiction. Furthermore, we direct Monke within 15 days to file with the Clerk of this Court its verified statement of costs and fees on

---

3. The following factors formed the basis for the bankruptcy court's conclusion that a sharecropping rather than a landlord-tenant relationship was created by Avey and Hilligoss:

"1. Nothing in the record indicates that the debtor had exclusive possession of the property. There was never a written lease conveying possession to the debtor, as there was in his relationship with Monke, nor did the debtor live on the premises. Nothing indicates that the debtor had any interest in the land other than participating with the landowner in raising crops.

2. The record further indicates that Avey Farms retained a large degree of control over the land. The landowner made repairs to all buildings, tiles and fencing and directed the debtor regarding rotation of crops, conservation practices, and participation in USDA farm programs.

3. Each paid for one-half of the seed, fertilizers and chemicals with the landowner directing the place of purchase and the quantity to be applied.

4. There was no provision for payment of cash rent. Each party paid one-half of the expenses and was to receive one-half of the crops grown.

5. The crops were divided in the field. The debtor was to be paid for harvesting the landowner's one-half of the crop. But, either shortly before or very soon after the filing of the petition, the landowner took possession of all crops growing upon its land, then entered an agreement with the Trustee to gather the crops itself. The landowner delivered the debtor's half of the crops to an elevator in the Trustee's name."

(Bank Br. 9–10).

appeal pursuant to Fed.R.App.P. 38 to be paid by the Bank to Monke.