**NORTH COMMUNITY BANK,**
Appellant,

v.

**John BOUMENOT, Appellee.**

**Nos. 88 C 8309, 87 B 522 and 87 A 372.**

United States District Court,
N.D. Illinois, E.D.

Sept. 15, 1989.

**150**

George D. Karcazes, Allen C. Weso-
lowski, Chicago, Ill., for plaintiff.

Arthur Gold, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The appellant North Community Bank brings this appeal of the United States Bankruptcy Court's August 19, 1988 judgment in this case. In its decision, the bankruptcy court found that the Bank had failed to meet its burden of showing by clear and convincing evidence that the appellee John Boumenot's debts should be non-dischargeable under 11 U.S.C. §§ 727(a)(4)(A) and 523(a)(2)(A) and (B). *See North Community Bank v. Boumenot,* No. 88 C 8309, Slip op. (Bankr.N.D.Ill. August 19, 1988) (DeWitt, J.). In its appeal, the Bank contends that Boumenot's debts are non-dischargeable under both of the above statutory provisions. The court will affirm the judgment of the bankruptcy court for the following reasons.

### I

*11 U.S.C. § 727(a)(4)(A): Intent*

In Count I of its adversary complaint, the Bank sought to have John Boumenot's debt declared non-dischargeable under 11 U.S.C. § 727(a)(4)(A). Under this provision, the Bank must prove by clear and convincing evidence that John Boumenot, the debtor, knowingly and fraudulently, in or in connection with the case, made a false oath or account to show that his debt is nondis-

chargeable. 11 U.S.C. § 727(a)(4); *North Community Bank,* Slip op. at 6. The Bank asserts that John Boumenot held a fifty percent beneficial interest in a land trust at the time he filed his bankruptcy petition in 1987 yet knowingly and intentionally failed to list this asset on the schedules that he filed with the bankruptcy court.

In her findings of fact and conclusions of law, Judge DeWitt expressly found that the Bank did not establish that John Boumenot owned an interest in the land trust at issue. *North Community Bank,* Slip op. at 6. Judge DeWitt also implicitly found that Boumenot lacked the requisite fraudulent intent. This court will affirm Judge DeWitt's decision on Count I. Even presuming that the Bank is able to establish that the finding concerning Boumenot's interest in the land trust was clearly erroneous, the Bank is unable to demonstrate the bankruptcy court's intent finding is similarly flawed. *See Matter of Agnew,* 818 F.2d 1284, 1290 (7th Cir.1987) (finding of fraudulent intent under § 727(a)(4) reviewed under the clearly erroneous standard).

The factual background of the matter is as follows.[1] In July 1979, John Boumenot and his brother Albert Boumenot borrowed $90,000 from North Community Bank. In connection with this loan, the brothers executed a note and security agreement. The loan was secured by an assignment of the beneficial interests in the Lake View Trust and Savings Bank Land Trust No. 5335 and in Lake View Land Trust No. 4305. John and Albert Boumenot each held fifty percent of the beneficial interest in Trust No. 5335. The brothers' assignment of their beneficial interest in Trust No. 5335 was accepted by the Bank and acknowledged by Lake View. On January 31, 1980, in response to the Boumenots' request, the Bank sent the Boumenots a payoff letter regarding their $90,000 loan. On February 4, 1980, John Boumenot executed an assignment of his beneficial interest in Trust No. 5335 to his brother Albert. That same day, John Boumenot executed and delivered a note in the amount of $10,000 to the

---

1. When restating the facts of this case, the court will rely on the unchallenged factual findings of

Judge DeWitt as stated in pages two through five of her order.

Bank. The Bank provided him with the proceeds of this loan. On February 7, 1980, the Bank received a payoff of the Boumenots' $90,000 loan. At this time, the Bank did not release the collateral assignment that was delivered to it in July of 1979 in connection with the $90,000 loan.

Between February 13, 1980 and June 12, 1981, John Boumenot along with his brother Albert and, on one occasion, Edward Kane executed and delivered four notes to the Bank. The Boumenots executed the first note on February 13, 1980 and the second note on January 16, 1981. Both notes were in the amount of $20,000. The first two notes were secured by the assignment of the beneficial interests in Trust No. 4305 and Trust No. 5335. John Boumenot and Kane executed the third note on May 20, 1981 in the amount of $100,000. Albert Boumenot executed a Power to Hypothecate in reference to this loan and his interest in Trust No. 5335. The Power to Hypothecate indicates that Albert Boumenot held the entire beneficial interest in Trust No. 5335. John Boumenot executed the fourth note on June 12, 1981 in the amount of $10,000. The third and fourth notes were secured by collateral which included the assignment of the beneficial interest in Trust No. 5335. After February 4, 1980 in connection with the above transactions, John Boumenot submitted three financial statements and Albert Boumenot submitted one such statement. John Boumenot was listed in each statement as having a fifty percent ownership interest in 1320 N. Hoyne, the real estate held in Trust No. 5335. John Boumenot's filing in bankruptcy case No. 87 B 522 failed to list his ownership interest in the real estate at 1320 N. Hoyne.

The Bank urges the reversal of Judge DeWitt's finding that John Boumenot did not act with the requisite intent. *See* Bank's Brief, at 9. The Bank asserts that Boumenot failed to follow the procedures required by Lake View when he assigned his beneficial interest to Albert on February 4, 1980. John Boumenot also failed to obtain the Bank's consent for the assignment as required by the July, 1979 collateral assignment of the beneficial interest in Trust No. 5335 that the Boumenots exe-

cuted in favor of the Bank. John Boumenot had experience in dealing with land trusts and requirements for changing beneficiaries. Given this, the Bank contends that his failure to follow the above requirements along with Albert Boumenot and his representations that he continued to have an ownership interest in Trust No. 5335 compels a conclusion that his failure to note the interest in his bankruptcy schedules was "intentional and fraudulent." The court disagrees.

First, John Boumenot testified that he believed that his brother Albert presented the February 4, 1980 assignment to Lake View for its acknowledgment. Transcript at 92. Second, the court finds that the bankruptcy court's findings regarding the Boumenots' financial statements are not clearly erroneous. The court found that John Boumenot and the Bank had a continuing relationship which existed for over ten years and resulted in numerous loan transactions. Boumenot and the Bank developed a relationship of trust to the extent that he would execute blank documents. *See* Defendants' Exhibits 6, 7 and 8. Boumenot occasionally signed notes in blank for Michael Perlman, a former loan officer at the Bank, and later received the completed copies. As the Bank appears to unwittingly concede, it is possible that Boumenot followed the above practice with the notes at issue in this case. Bank's Reply at 24–25. Moreover, Perlman, the person most familiar with the loan accounts of John Boumenot, testified that Boumenot would provide him with signed blank documents. Transcript at 168, 184. Boumenot testified that he would tell the Bank that he needed money and would come in and sign the forms. Transcript at 208. He "never pa[id] attention to details." *Id.* at 219.

The Bank cites to the testimony of George Feldman, one of its former loan officers, who testified that John Boumenot normally paid attention to the details of his transactions. Transcript, at 151. It is evident that Judge DeWitt rejected Feldman's testimony on this point and credited the testimony of Perlman and Boumenot. *See North Community Bank*, Slip op. at 4–5.

The bankruptcy court's factual findings are reviewed under the clearly erroneous standard. *See Matter of Hilligoss*, 849 F.2d 280, 281 (7th Cir.1988).

As the Supreme Court has held, "[a] finding is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bressemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Moreover, "[i]f the [bankruptcy court's] account of the evidence is plausible in light of the record in its entirety, [this court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

▇▇▇ The bankruptcy court findings that turn on the credibility of witnesses are to be given due deference. *See Matter of Hilligoss*, 849 F.2d at 281 (citing to Bankruptcy Court Rule 8013). Furthermore,

> when a trial judge's finding is based on his [or her] decision to credit the testimony of one or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can never be clear error.

*Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512. In this case, the bankruptcy court's findings concerning Boumenot's inattentiveness and willingness to sign documents in blank are supported by extrinsic evidence. *See* Defendants' Exhibits 6, 7 and 8. Therefore, these findings are not clearly erroneous.

The Bank emphasizes the fact that Boumenot provided the information that appears on the real estate schedules that were attached to his financial statements. Transcript at 106. These schedules state that John Boumenot retained a fifty percent interest in Trust No. 5335. When asked why his real estate schedules continued to reflect an ownership interest after

he had supposedly assigned his interest in the property to his brother, Boumenot stated that he "was just screwed up." *Id.* at 203.

The Bank also relies on the fact that Albert Boumenot listed John Boumenot as having a fifty percent interest in Trust No. 5335 in his January 21, 1981 financial statement. This fact, according to the Bank, shows that the Boumenots did not believe that John had assigned his interest to Albert. Assuming this, one could conclude that John's failure to state his interest in Trust No. 5335 on his bankruptcy filing was knowing and intentional. Judge De-Witt, who credited the testimony of Albert and his wife Joanne Boumenot, found to the contrary. Albert Boumenot testified that he owned one hundred percent of the interest in Trust No. 5335 when he filed the financial statement at issue. Transcript, at 256. Notwithstanding this, he listed John as having a fifty percent interest in the trust because the Bank refused to release its assigned beneficial interest in the trust's real estate. *Id.*

Although the Bank contends that Albert's testimony cannot support a finding that the Bank failed to release its assignment, his testimony is corroborated by other testimony and extrinsic evidence. Joanne Boumenot testified that she brought the document showing John Boumenot's assignment of his interest to Lake View. *Id.* at 243. She told the receptionist to get back with her if there was a problem. Within one day, someone from Lake View called and told her to get the document. After she returned to Lake View, they gave her the document and told her to get in touch with the Bank. *Id.* at 244. This testimony supports an inference that Lake View would not accept the assignment because of a problem with the Bank. One could infer that the "problem" was the Bank's refusal to release its lien.

In addition, the Power to Hypothecate, plaintiff's exhibit 12, also provides support for Albert's claim that he owned one hundred percent of the interest in Trust No. 5335. This document, which was executed by Albert, stated that the interest in Trust

No. 5355 was the property of Albert Boumenot. Furthermore, Albert Boumenot filed a suit in the Circuit Court of Cook County alleging, among other things, that the Bank's wrongful failure to release the assignment at issue caused him damage. *See* Defendant's Exhibit 42. Albert's explanation for why he continued to list John's interest in his financial statement is plausible and, thus, is not clearly erroneous. *Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512.

The court further concludes that Judge DeWitt's finding that John Boumenot did not knowingly and intentionally fail to include his ownership interest in Trust No. 5335 on his filing is not clearly erroneous. The court reaches this conclusion in consideration of Boumenot's inattentiveness to detail, his relationship of trust with the Bank which resulted in his signing blank documents,[2] and his effort to assign his interest in Trust No. 5335 to his brother Albert. These factors support the conclusion that John Boumenot made a mistake when he submitted the schedules showing that he retained an ownership interest in Trust No. 5335. *See* King, 4 *Collier on Bankruptcy,* ¶ 727.04 at 727–60 and 727–61 (15th ed. 1989) ("if items were omitted by mistake ... that declaration will not be deemed wilfully false, and the discharge should not be denied because of it"). Accordingly, the court will affirm the bankruptcy court's finding that John Boumenot should not be denied discharge of his debts under 11 U.S.C. § 727(a)(4).

## III

### *11 U.S.C. § 523(a)(2): Intent*

■ In Count II of its adversary complaint, the Bank sought to have John Boumenot's debt declared non-dischargeable under 11 U.S.C. § 523(a)(2). To establish that Boumenot is not entitled to discharge under this provision, the Bank must show by clear and convincing evidence that he submitted materially false written statements with the intent to deceive which the Bank reasonably relied on when extending credit. *See* 11 U.S.C. § 525(a)(2). The Bank challenges the bankruptcy court's findings on each element. However, the court will focus on the issue of Boumenot's intent as it is dispositive of this matter. The Bank contends that Boumenot showed reckless disregard for the truth of the matters asserted in the documents provided to the Bank. A showing of reckless disregard can satisfy the intent requirement of § 523(a)(2). *See, e.g., Matter of Garman,* 643 F.2d 1252, 1260–61 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981); *In Re Phillips,* 804 F.2d 930, 933–34 (6th Cir.1986) (citing to *Garman* ). The Bank analogizes this case to the decision in *Matter of Archer,* 55 B.R. 174 (Bank. M.D. Ga.1985) and *In Re Coughlin,* 27 B.R. 632 (Bankr. 1st Cir. 1983). The court finds that the above cases are distinguishable for several reasons.

■ First, the debtors in *Coughlin* and *Archer* did not supply the inaccurate information which appeared on their financial statements. In both cases, third parties completed the applications on behalf of the debtors. *Coughlin,* 27 B.R. at 634; *Archer,* 55 B.R. at 179. In addition, the debtors did not review the financial statements before they were filed. In *Coughlin,* the record did not reveal the source of the inaccurate information. *Coughlin,* 27 B.R. at 634. In *Archer,* the debtor signed the application in blank without reading the text printed on the form. *Archer,* 55 B.R. at 179. He gave the applications to the third party so that they could be completed notwithstanding the fact that he could not remember when, if ever, he had provided this person with information about his financial affairs. *Id.* "Without such information, [the debtor] had no reasonable basis to believe that [the third party] would accurately and truthfully fill out the applications." *Id.* In both cases, the financial

---

**2.** Boumenot's submission of executed blank documents to the Bank necessarily required the Bank's personnel to type crucial information onto the forms. For example, Bank personnel typed the description of collateral on Boumenot's notes and security agreements. *See* Transcript, at 204.

statements in issue contained numerous inaccuracies.[3]

Thus, in *Coughlin* and *Archer* the debtors, who were experienced in finance and business, allowed third parties to complete their financial applications without providing them with any information about their financial circumstances. The financial statements contained gross inaccuracies that the debtors would certainly have noticed had they bothered to review the statements. *Coughlin*, 27 B.R. at 636; *Archer*, 55 B.R. at 179. The dramatic disparity between the inaccurate information provided in the statement and the correct information in itself provides a basis for a finding of reckless disregard for the truth. *See In Re Liming*, 797 F.2d 895, 897 (10th Cir.1986).

In this case, John Boumenot provided the false information in the real estate schedule.[4] Whether or not he in fact retained an ownership interest in Trust No. 5335 at the time the financial statements were filed, it is undisputed that he owned such an interest until the February 4, 1980 assignment. Thus, the false information in this case was in fact accurate until a relatively short period of time before the statements were filed. Moreover, each statement contained only one false item of information. The real estate schedules, taken as a whole, were not totally or even substantially inaccurate. The facts support a conclusion that Boumenot was merely negligent in failing to delete the ownership interest in the trust from his schedules. "It is not enough for the evidence to show merely that the debtor should have known that his statement was false or that his ... false financial statement was the product of his negligence." *In Re Harmer*, 61 B.R. 1, 9 (Bankr. D.Utah 1984).

Finally, John Boumenot testified that he never intended to mislead, defraud, or make misrepresentations to the Bank.

Transcript, at 214. The Bank cites to the Tenth Circuit's decision in *In Re Liming* for the proposition that a debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts. *Liming*, 797 F.2d at 897 (and authorities cited within). While this court has no quarrel with the above statement, it will not apply the proposition to this case. In *Liming*, the debtor filed a loan application indicating that he had a net worth of $183,000 and total debts of $88,000. Two and one half months after he had obtained a $15,000 loan based upon his application, the debtor filed a revised financial statement listing a net worth of $33,000 and total debts of $264,000. *Id.* at 896–97. The debtor cited no intervening events or other acceptable explanation for the "remarkable shift in his financial status." *Id.* at 897. The Tenth Circuit refused to credit the debtors unsupported assertion of an honest intent in the fact of these facts. In this case, Judge DeWitt apparently credited Boumenot's assertion of his honest intent. This decision is not clearly erroneous for the reasons stated above. *See supra* at 153, 154. Consequently, the court finds that Judge DeWitt's decision that the Bank failed to establish Boumenot's fraudulent intent is not clearly erroneous. Accordingly, the court will affirm the bankruptcy court's holding that discharge should not be denied pursuant to 11 U.S.C. § 523(a)(2).

### Conclusion

For the foregoing reasons, the court affirms the decision of the bankruptcy court in case number 87 B 522.

---

**3.** In *Coughlin,* the court characterized the information provided in the financial statement as "totally inaccurate." *Coughlin,* 27 B.R. at 634. The 1980 application at issue "listed assets of $1,733,000, liabilities of $73,500, net worth of $1,659,500, annual business income of $650,000 and other annual business income of $60,000.

Coughlin's actual net worth in July, 1980 was $50,000 to $60,000." *Id.*

**4.** The court will assume for the purposes of this discussion that the allegedly false information provided was in fact false.