**In re Kevin L. FREY and Valerie M. Frey, a/k/a Valerie M. Berger, Debtors.**

**AVCO FINANCIAL SERVICES, INC., Plaintiff,**

**v.**

**Kevin L. FREY and Valerie M. Frey, Defendants.**

Bankruptcy No. 92–30254.

Adv. No. 92–7044.

United States Bankruptcy Court, D. North Dakota.

Dec. 29, 1992.

Gary D. Ramsey, Dickinson, ND, for defendant.

Charles E. Johnson, Bismarck, ND, for plaintiff.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Judge.

The plaintiff, Avco Financial Services, Inc. (Avco), commenced the above-captioned adversary proceeding on May 4,

1992, seeking a determination that the sum of $9,617.00 being the balance due on a loan made to the Debtors is nondischargeable pursuant to section 523(a)(2)(B) of the United States Bankruptcy Code. The Debtors generally deny the allegations with their principal defense centering upon the elements of intent and reliance.

Trial was held on December 1, 1992. From the evidence presented, the court finds the facts as material to be as follows:

### Findings of Fact

1.

The Debtors reside in Dickinson, North Dakota where Kevin is presently employed as a juvenile counselor. Prior to this career he was a truck driver and for a fairly short period of time operated his own rig which consisted of a 1978 Peterbilt tractor and a 1980 utility trailer both of which he purchased through a loan from the Commercial Bank of Mott (Bank) in the sum of $36,000.00. The loan was essentially nonperforming and by 1987 $57,000.00 was owed. A renewal note was signed by Kevin for this sum and was guaranteed by his father. The Bank, recognizing its collateral was deteriorating and apparently realizing the likely impossibility of a full payoff, discussed the situation with Kevin's father who was also a trucker. A verbal arrangement was reached between the Bank and the father whereby Kevin would put the tractor and trailer up for sale with any proceeds applied to a reduced loan balance. From the testimony it appears that Kevin himself was not actively involved in these negotiations and had a fairly limited appreciation of exactly what the deal, as negotiated, actually was. Kevin was, however, told of the arrangement by his father. As agreed, the 1987 note was charged down by $32,862.00 to $25,000.00, a sum which the Bank hoped would prove to be the market value of the tractor and trailer.

The tractor remained in Kevin's possession until it was eventually sold for $8,000.00 with these proceeds being applied to the bank loan. According to his loan officer, it was the Bank's intention to at least satisfy the written down balance from

a combination of the sale proceeds and deficiency payments to be made by Kevin and his father. After applying the truck proceeds the Bank, for reasons that are unclear, made several more internal charge downs to a point where by March 1990, the indebtedness owing to the Bank was only $7,000.00.

Kevin testified that he was aware of the charge offs but was unsure whether the entire debt had been charged off or not. He said he thought that after the sale of the tractor the Bank was charging off the entire balance. In fact, the note has never been canceled and in August 1990, the Bank sent Kevin a letter demanding monthly payments on the $7,000.00 balance. Kevin made several payments on the deficiency, the last one in September 1990, for $50.00. The Bank, however, recognized little hope of collection and has closed its file. No report of the Debtors' bank history or charge offs appeared in the credit bureau files.

Although Kevin professed to be confused over exactly what the nature of the charge off transaction was and whether he had any remaining obligation, there's nothing in the evidence to suggest that he made any effort to contact the Bank or inquire of the loan's status.

### 2.

The Debtors had for some time maintained a borrowing relationship with Avco. In June 1990, they obtained a $11,550.00 loan which was used in part to pay off another unrelated loan and refinance a previous Avco loan taken out in March 1990. In connection with the June 19, 1990 loan and the earlier March 1990 loan, the Debtors were required to complete a "Statement of Indebtedness" which, in easy to read print, required them to list all debts of all kinds. There was no reference to the Commercial Bank of Mott loan being made and just above the signature line Kevin printed the words "we owe no other debts". These two Avco loans are also accompanied by a loan application form which asks for particular information regarding the applicants' bank. The Debtors, while listing the Commercial Bank of Mott as their bank for checking and savings accounts, checked a box to the effect that none of their accounts with the Bank were past due. Again, as with the Statement of Indebtedness, the Bank was not listed as a creditor.

According to Avco's testifying officer, although the loan agreement may ante date the Statement of Indebtedness, which in both cases is dated several days subsequent to the loan agreement date, Avco makes no disbursement until the statement is received and the information verified.

According to Kevin, he advised Avco of his trucking occupation back in 1988 but by 1990 he was no longer a trucker so didn't discuss it with them further. He felt he didn't owe any money in consequence of the old truck loan because of the charge offs and also because no one from the Bank had made a demand for payment. He did, however, agree, upon cross examination, that a debt is still owing unless the note itself is canceled.

Upon receiving the Statement of Indebtedness and other information Avco did a credit check which failed to reveal any lending history with the Commercial Bank of Mott. Avco did not learn of the Bank deficiency until it received the Debtors' bankruptcy schedules whereupon it called the Bank and learned of the lending and charge off situation. According to Avco, it would never have advanced either the March or June loan proceeds had it been armed with the knowledge of the series of write downs and the remaining deficiency. The Bank deficiency would have caused it to re-compute the Debtors credit worthiness which, given the Debtors' income, would have put them outside of the established debt to equity guidelines. Independent of the outstanding deficiency and its effect upon credit worthiness, the charge downs themselves adversely affected credit worthiness because they jeopardized Avco's loan. In sum, according to Avco, knowledge of the Bank loan would have caused it to decline the Debtors' March and June loan applications, their employment and payment histories notwithstanding.

### Conclusions of Law

The operative provision relied upon by Avco is section 523(a)(2)(B), which makes nondischargeable in a Chapter 7 case a debt obtained:

> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—
>> (B) use of statement in writing—
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive; ...

11 U.S.C. § 523(a)(2)(B).

Under the foregoing section a creditor may have a debt owing to it declared nondischargeable if:

> The following six elements are established by a preponderance of the evidence:
> (1) the debtor makes, (2) a statement in writing, (3) respecting the debtor's or an insiders financial condition, (4) which statement is materially false, (5) which is made with the intent to deceive, and (6) which is reasonably relied upon by the creditor.

*Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

The several statements of indebtedness submitted by the Debtors to Avco do constitute statements by them in writing respecting their financial condition. Thus, three of the elements are easily met. Remaining for discussion is whether the statements were materially false, whether they were issued with the requisite intent to deceive Avco and whether Avco reasonably relied upon those statements in granting the loan to the Debtors. Based upon the evidence presented the court finds that Avco has established all three issues by a fair preponderance of the evidence.

A statement is materially false for purposes of section 523(a)(2)(B) if it "paints a substantially untruthful picture of a financial condition by misrepresenting of the type which would normally affect the decision to grant credit." *Matter of Jordan,* 927 F.2d 221, 223 (5th Cir.1991). It is well established that writings with pertinent omissions of critical information may qualify as materially false for purposes of section 523(a)(2)(B). *In re Mutschler,* 45 B.R. 482 (Bankr.D.N.D.1984). A statement or omission is said to be material if it paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit. *In re Masegian,* 134 B.R. 402 (Bankr.E.D.Cal.1991); *In re Hunt,* 30 B.R. 425, 440 (Bankr.M.D.Tenn.1983). In the case at bar, the Debtors omitted any reference at all to the outstanding obligation owing to the Bank, information which if revealed would have played a critical part in Avco's assessment of the Debtors' credit worthiness. Hence, Avco has demonstrated that the several statements of indebtedness were materially false.

Under section 523(a)(2)(B), a creditor need not show that the debtor had actual knowledge of the falsity of financial information provided to the creditor. Rather, a creditor can establish the requisite intent to deceive upon a showing of either actual knowledge of the falsity of the statement or reckless indifference to or reckless disregard for the accuracy of the information in the financial statement of the debtor. *Matter of Garman,* 643 F.2d 1252 (7th Cir.1980); *North Community Bank v. Boumenot,* 106 B.R. 149 (Bankr. N.D.Ill.1989). Although at the trial Kevin expressed some confusion over exactly what the nature of his obligation to the Bank was, there is no doubt that he well understood what the nature of a loan obligation was and that he had signed a note promising to pay the Bank $57,000.00 and that that note while affected by a series of charge offs, had never been actually canceled. If he was uncertain as to the exact nature of the obligation remaining, it was his affirmative duty to contact the Bank and satisfy his ignorance rather than blithely assuming there to be no remaining

debt and give Avco that false impression. Both Debtors have a long history of borrowing and can hardly be said to be neophytes 'when it comes to bank and financial dealings. The omission of any reference to the Bank debt from the statement of indebtedness can only have been done with an actual intent to mislead Avco or with total reckless indifference for the truth. *See In re Coughlin*, 27 B.R. 632 (1st Cir. BAP 1983) (where requirement of intent to deceive was met where debtor signed loan application without reading it.) The court must conclude that the element of intent has been met with the requisite degree of proof.

█ The remaining issue is that of reasonable reliance which as with the other elements must be established by a fair preponderance of the evidence. The evidence suggests first of all that Avco followed its usual lending procedures in dealing with the Debtors. Indeed, it sought a credit report which seemed to justify its lending decision. The several statements of indebtedness contained in themselves no "red flags" from which a creditor might reasonably assume them to be false or from which a creditor might conclude that further investigation would be necessary. In fact, the Debtors' previous relationship with Avco coupled with the incomplete statements of indebtedness might be said to have lulled Avco into a false sense of security causing it to make a loan which it otherwise never would have made had it been aware of the Debtors' borrowing practices with the Bank. The court is satisfied that Avco reasonably relied upon the statements of indebtedness to its detriment and such reliance resulted in the loss complained of.

Accordingly, and for the reasons stated, the court concludes that Avco has proven over a fair preponderance of the evidence all requisite elements necessary to the denial of a discharge under section 523(a)(2)(B). Accordingly, the outstanding obligation in the sum of $9,617.00 owing to the plaintiff, Avco Financial Services, Inc., by the Debtors/defendants, Kevin Frey and Valerie Frey, is declared non-dischargeable.

JUDGMENT MAY BE ENTERED ACCORDINGLY.

SO ORDERED